## THE TOW OF BOW

*versus*

## THE TOWN OF NOTTINGHAM.

Before our statute of January 1, 1796, an illegitimate child had a settlement in
the place of its birth.

Such a child, after the age of seven, could acquire a new settlement in its own
right, by a year's residence in a different town.

A warning out was invalid, unless served, and returned to the clerk's office
within a year from the commencement of the pauper's residence.

What cases are within the provisos of the *antient* statutes on the settlement of
paupers.

THIS was an action of *assumpsit,* for money expended in
the relief of *Rachel Welch* and her five children, who were
all admitted to be paupers.

The cause was tried in *Rockingham* county, at the last
February term, and continued *nisi* for advisement.

The plaintiffs proved that in A. D., 1777, said *Rachel* was
born in *Nottingham,* of one *Deborah Elliot;* that some
months afterwards, *John Welch,* the reputed father of *Rachel,*
returned from the army and married said *Deborah:* that
*Rachel* continued to live with them, and in March, A. D.,
1792, the whole family removed to *Bow;* that, on the
27th day of August, in the same year, a warrant issued,
by which, in December following, they were all duly warn-
ed to depart from that town, but the warrant was not re-
turned to the clerk's office till November, 1793, and said *Ra-
chel* did not leave *Bow* till more than a year after her removal
there; that since January, 1796, she has become the
mother of five bastard children, who with herself received
the relief sued for; and *that none of them possess any set-
tlement* except what may have been obtained under the above
facts.

A verdict was taken for the plaintiffs, to the amount of the
money expended, which it was agreed should be set aside,
or affirmed, as the court might entertain an opinion, on the
evidence offered, that the settlement of the paupers was in
*Bow* or *Nottingham.*

*Green* for the plaintiffs.

*J. Smith* for the defendant.

WOODBURY, J. delivered the opinion of the court.

In this case by our present statute(1) the children of *Rachel Welch* possess the settlement of their mother. Unless her settlement, then, at the time of the relief afforded, was in *Nottingham*, the verdict must be set aside. According to the evidence, she was born in *Nottingham*, in A. D., 1777, and was an illegitimate child. The subsequent marriage of her parents would not here, as under the civil law(2) and in places where that law is adopted, *tollit peccatum precedens*, and legitimatize the former issue(3.) If the place, therefore, in which a bastard may have been born, was, in A. D. 1777, the place of its settlement, the present pauper at that time became chargeable to *Nottingham*. And whether such place were then the settlement of a bastard must depend upon the principles of the English law. For at that time no other law on this subject had been here "adopted, used or approved."—*Constit., page* 22.—*Plaistow* vs. *Kingston, Rock., Sep.,* 1808.

But by those principles it is well settled that bastards are chargeable to the place of their birth :(4) and as *Rachel Welch* thus became chargeable to *Nottingham*, that town must still support her, unless, by a subsequent residence in *Bow*, from March, A. D., 1792, to April, 1793, she acquired a new settlement. At the time of that residence our statute (5) as to paupers in general, provided that "every person, "who hath lived one year in any town or place, shall be "deemed an inhabitant of such town or place unless sometime "within such year, and before the expiration thereof, such "person shall have been, by warrant from the selectmen of "such town or place, directed to any constable thereof," warned "to depart from such town or place, and the said "warrant, and the return of such warning made by the per- "son to whom directed within the time aforesaid returned to "the clerk of the court of general sessions of the peace, in "the same county, and put on file, which shall always be "done by said clerk, and a minute thereon made of the "time of receiving the same. Provided, always, that nothing

(1) *Stat.* 362.

(2) 1 *Woodes,* 390, 391.—1 *Bl. C.* 454.—1 *Reev. Hi. E. L.* 119, 464.

(3) 6 *Coke* 65. *Swimb.* 310.

(4) 1 *Bl. C.* 459. —*Burns' Jus.* "*Poor.*"—*Burr. S. C. No.* 66.— 1 *Salk.* 121,—12 *Mass. R.* 432.— 14 *John.* 334.

(5) *Stat.* 356.

" in this section contained shall be construed to extend " to persons committed or lawfully restrained in any town, " or to such as shall be sent for education, or to any physi- " cian, to be healed or cured."

Under this statute, therefore, *Rachel Welch* did acquire a new settlement in *Bow*, if, by legal construction, she was embraced in the phrase, " every person," and was not within some part of the proviso, nor warned out in the manner pre- scribed. But general expressions in statutes are often re- stricted by the preamble or by the subject matter(6.) As disputes depended on the settlement of those persons who were able to gain one in their own right, it is probable the legislature intended to prescribe a rule for the settlement of " every person" who possessed such ability. Nor did any reason exist which required the passage of a new statute, whose operation should be more extensive, and should sepa- rate, if happening to live apart a year, those not before able to gain a settlement in their own right, as nurse children from their parents, slaves from their masters, and wives from their husbands(7.)

An illegitimate child, however, is for most legal objects considered destitute of parents.

The express provisions of some statutes, and laboured con- structions to enforce others, have, for certain purposes, made courts recognize both the putative father and mother ; as in acts for the maintenance of bastard children ;(8) in decisions on the validity of marriages, made within the Levitical de- grees,(9) or without the assent of parents,(10) or by fraud and force :(11) in decisions on enlistments without consent, (12) and in disputes as to the custody of the infant's person (13.) Still, as to property and settlement such a child is " in truth, and in law, *nullius filius*"(14.) " *Bastard est proprement die dit le commenc de son family intant que ad utter incapacity de faire resant pluis haut*"(15.) He can- not inherit from his natural parents, nor they from him.—1 *Bl. C.* 459.

(6) 1 *Mass. R.* 391, *Martin* vs. *The Common- wealth.*—1 *Hawk. P. C. book* 1, *ch.* 65, *sec.* 20.—6 *Bac. Statute H,*2.

(7) 3 *Mass. R.* 322.—4 *do.* 123. —12 *do.* 385.

(8) *Statute* 352.

(9) *Ld. Ray.* 68, *Haines* vs. *Jef- frey, Com. R.* 2. 2. *S. C.*

(10) 1 *D. & E.* 96.

(11) *Stra.* 152, *Rex.* vs. *Conforth et al.*

(12) *Niles' Reg.* 103, *Shavins' case.*

(13) 4 *Bos. & Pul.* 148.—5 *East,* 224. —7 *do.* 579.—5 *D. & E.* 278.—2 *Mass. R.* 109.

(14) 6 *Co.* 65, *Finch's case.*

(15) *Sid.* 200, *Collingwood* vs. *Hayes.*

We have seen, too, that not the parents, but the place of the birth of the bastard, conferred on him his first settlement: and, as in this respect, when most helpless, he derived nothing from them, it would be unreasonable to suppose that they could afterwards controul his settlement when he had reached an age at which the law expects in him ability to maintain himself(16.)

(16) 3 *Burns'* *Jus.* 253.

The ancient practice to warn out infants, and the exceptions as to persons "sent for nursing" and "education," countenance the idea that minors under certain circumstances were intended to be embraced in the general clause of the statute. Notwithstanding the views of the court, then, in 12 *Mass. R.* 383, we apprehend that in this state on principle *Rachel Welch*, having been a bastard, and at the age of fifteen, when she lived in *Bow*, was so emancipated as to be able to obtain a settlement in her own right. Such is said to have been the decision in *Lyndeborough* vs. *Milford, Hill., Ap.*, 1817—and so are all the English authorities as to illegitimate children over the age of seven(17.) Nor was she within any part of the proviso. She was not sent to *Bow* to be "healed or cured." She was not committed, or lawfully retained there, because that expression has been construed to embrace only such as were confined in prison: and the province statute, 5 Geo. 1,(18) contained the words, "committed to prison." Nor was she "sent for education" within the meaning which was given to that clause in *Lyndeborough* vs. *Milford;* where it was held to include only such persons as were sent to be nursed, or to school, or to trade under indentures. The warrant, however, by which they warned her to depart from *Bow* would have prevented her from gaining a settlement, had it been returned within the year to the clerk's office. But it was not: and the requisition of the statute on this point is so express, and the reason for it, that towns might seasonably know by the public records whether those who became chargeable had acquired settlements by their residence in other places, is so obvious, that

(17) *Doug.* 7, 9.
*Bimpson et al.* vs.
*Johnson et al.*—
3 *Burns' J.* 353.

(18) *Stat. Ap.* 590.

Bow
*vs.*
Nottingham.

we could not be justified in extending the time by any construction.—*Bac. Statute, H.*—2 *Cran.* 386, *United States* vs. *Fisher.*

(19) *Stat. Apx.* 590.

The impression that it was necessary to extend the time under the statute of 5 Geo. 1,(19) is not well founded. The warrant was then to be returned to "the court of quarter sessions" in three months, though the court sat only twice in a year; but a return within the required period to the *clerk* of the court, as is practised with most precepts, would have been sufficient; and, for aught that we know, it was always so held. Under the rigid rules of construction, therefore, which are applicable to this class of cases, *Rachel Welch* acquired a settlement in *Bow.* Consequently the verdict must be set aside, and the plaintiff become nonsuit.