# Pote's Appeal.

1. The appointment of a guardian is a final decree on which an
appeal lies to the Supreme Court, but the legal discretion of the Or-
phans' Court as to the fitness of the person is not the subject of review.

2. Although a bastard may not be looked upon as a child of its father
for any civil purpose, the ties of nature are respected in regard to its
maintenance, and the putative father is entitled to its custody as against
all but the mother. He is, therefore, a proper person to petition the
court for the appointment of a guardian.

3. When, in a petition for the appointment of a guardian, there is a
misnomer, but a correct description of the minor, the record cannot be
regarded as a nullity. The identity of the person is fixed, and the mis-
nomer can be corrected by amendment.

May 13, 1884.   Before MERCUR, C. J., GORDON, PAXSON,
TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Bedford county*: Of
January Term, 1884, No. 153.

This was an appeal by John B. Pote, from a decree revok-
ing his appointment as guardian of Mary Margaret Irene
Pote, a minor, and confirming the appointment of D. S.
Brumbaugh as guardian of said minor.

From the petitions and answer hereinafter referred to, the
facts appeared to be as follows:

Harriet L. Pote, a single woman, daughter of John B. Pote,
became the mother of a female child on or about the 18th day
of February, 1876, the putative father being Dr. S. S. Brum-
baugh.   Claims on behalf of the mother were settled by the
putative father paying the sum of about $500 to the mother.
Harriet L. Pote died on or about the 28th of November, 1882,
leaving this child with her parents where she and her child
had always lived.   On January 10, 1883, Dr. S. S. Brumbaugh

presented his petition to the court praying the appointment of a guardian for M. Brumbaugh, a minor child of Harriet L. Pote, and on same day D. S. Brumbaugh, a brother of Dr. S. S. Brumbaugh was appointed guardian.

On February 12, 1883, there being no record or notice of any appointment of a guardian of Mary Margaret Irene Pote, Andrew C. Pote, brother of Harriet L. Pote, presented his petition to the court, praying the appointment of a guardian for Mary Margaret Irene Pote, minor child of Harriet L. Pote, deceased, and on the same day John B. Pote, grandfather of said child, was appointed guardian, and gave bond.

On April 16, 1883, D. S. Brumbaugh presented a petition praying the court to amend the record of his appointment by changing the name in his petition from M. Brumbaugh to Mary Margaret Pote, and for a rule on John B. Pote to show cause why his appointment should "not be decreed null and void." To this rule John B. Pote filed an answer, on the 18th of June, 1883, stating that he had no notice of the appointment of D. S. Brumbaugh, and objecting to the amendment, and on July 17th, 1883, D. S. Brumbaugh filed a replication, and on 25th July, 1883, John B. Pote presented his petition asking the revocation of the appointment of D. S. Brumbaugh. On September 3, 1883 (the first day of the regular term), this was returnable, and on that day the court, in a written opinion filed, revoked the appointment of D. S. Brumbaugh. The latter filed an answer upon the same day, and the court thereupon granted a rehearing. This took place upon October 31st, and on November 21st the court filed the following opinion and decree (after reciting the facts):

"Assuming that on the face of the petitions the appointment of each was sufficiently formal and regular, yet both appointments can not stand. The commission of one must be revoked.

"The argument that Pote's petition should have been presented only after notice to the father, or that it should have set forth some reason why an appointment should be made on any other person's petition without consulting him, though apparently well founded, loses its force when the facts are considered. The petition purported to be signed by an uncle, and, if the child had been legitimate, he would have borne this relation; it negatived the existence of a father by stating that the child 'has no guardian to take care of her person and estate,' and is the child, not of Dr. S. S. Brumbaugh, but of Harriet L. Pote, deceased. The counsel of Dr. S. S. Brumbaugh, themselves, show that he is the putative father and does not live within the jurisdiction of the court. The petition did not disclose the fact that the child was a bastard, and hence

the appointment, on the petition of Andrew C. Pote, as uncle, was regular and valid until, for valid reasons, it is shown that it should be revoked.

"It is alleged that the appointment is void because of the prior appointment of D. S. Brumbaugh as guardian; but D. S. Brumbaugh was appointed guardian for M. Brumbaugh, minor child of Harriet L. Pote and daughter of S. S. Brumbaugh. It has been developed on this hearing that M. Brumbaugh was intended for Mary Margaret Irene Pote, and that the name was inadvertently used by the putative father, and that, in point of fact, D. S. Brumbaugh had been appointed her guardian on the petition of her putative father; but the petition on which the court acted indicated no such thing. The court might, even if it had knowledge of the appointment of a guardian for Harriet L. Pote's daughter, Mary Margaret Irene Pote, have readily supposed that M. Brumbaugh was another daughter of Harriet L. Pote. Possibly close scrutiny might have led the court, in the one case, to have inferred illegitimacy; but, surely, counsel did not even hint so much, at the time the appointments were made.

"We are now confronted by the anomaly of two guardians for the same child. The commission of one must be revoked. It is not simply a contest between two guardians, but the mother's father and the putative father of the child become the real actors. Andrew C. Pote, on whose petition John B. Pote was appointed guardian, was not legally related to the child, although he was her mother's brother; nor is the guardian, John B. Pote, though her mother's father, legally related to the child. Yet we should hold as a rule, when no good reason appeared for holding the contrary, that the putative father, as against the near relations of the mother, had no standing in court to urge the revocation of the appointment of a guardian made on their petition. As the case now stands, as to the question of allowing the amendment as prayed for by D. S. Brumbaugh, who was appointed guardian for the person and estate of this same child on the petition of the putative father, and was duly commissioned before the petition of Andrew C. Pote was presented, and if nothing else appeared, we should not hold that the mere fact of a first appointment would make Brumbaugh's commission irrevocable. But the question is fairly raised as to which of the two guardians' commissions should stand, in the light of the highest and best interests of the child. Both appointees are honest, worthy and responsible persons; and either would, doubtless, safely hold and manage the estate; but the one appointed on petition of the putative father, by writings presented to the court which he prays leave to file and which leave is now

granted, offers, apparently in good faith, that he will become responsible in a sufficient bond conditioned that the child shall be, in all respects, well cared for during its minority, shall be clothed, boarded, lodged and maintained comfortably, and well educated until it arrives at full age, free of all expense to its own estate, so that its own entire estate may be safely invested to the best advantage for its benefit.

" The custody of the person of this child, and its moral and intellectual training, are matters of great moment. The putative father claims the custody in order that he may train it morally and intellectually, and represents that his circumstances in life and his location and surroundings are of such a character as, when taken in connection with his professed honest and sincere purpose to do well for his child, should warrant the court in confirming the appointment of the guardian made on his petition, as against the mother's relatives, who cannot be supposed to have the same affection for the child that he has. They are farmers, residing in the country, where the same liberal school facilities do not exist as are in reach and command of the putative father; and their habits of life and religious convictions lead them to undervalue that higher education which he is so desirous it should have. The guardian appointed on his petition is favorable to the claim of the putative father.

" Counsel for Dr. Braumbaugh invoke the statute and insist that the appointment should be made with regard to the religious persuasion of the parties; but we fail to see any force in this because the mother was, and her father, who was appointed a guardian, is a German Baptist, the putative father a member of the Reformed Church, and D. S. Brumbaugh a Lutheran, all protestants. If the religious faith of parents be considered, this child having in law a mother and only a putative father, and that mother having been a Baptist, would literally fulfill the statute; but, after an appointment has been made, and fitly made, a commission will not be revoked because the guardian is of a different religious faith, unless he would unduly influence the child, or other good cause be shown.

" Considering the praiseworthy offer made by the guardian first appointed on the petition of the putative father, and which we now assume was made in the utmost good faith and in the best interests of the child; and his offer to give bond and surety that no charge will, at any time, be made against the estate of the minor for the care and management of its estate; or for its clothing, lodging, maintenance, or education, during nonage; and the open and frank profession of good faith on the part of the putative father; and his professed honest and sincere desire to well care for his illegitimate child

coupled with his acknowleged standing and ability; and the further fact that a more thorough and higher education than can be had in the community where the mother's father resides, is offered, and is possible under the care of the putative father we cannot help looking with favor on what seems so apparently and manifestly calculated to promote the best interests of the child. . . . . .

" Upon due consideration of the whole case, we now order and decree:

" 1. That the former decree made and filed September 3. 1883, be revoked.

" 2. That the petition of Dr. S. S. Brumbaugh for the appointment of a guardian for M. Brumbaugh a minor child of Harriet L. Pote, deceased, and the record made thereof be amended by striking out the name of M. Brumbaugh and inserting that of Mary Margaret Irene Pote.

" 3. That the commission of John B. Pote be revoked, the costs of that proceeding, and of his commission to be paid by Dr. S. S. Braumbaugh.

" 4. That the appointment of D. S. Brumbaugh as guardian of Mary Margaret Irene Pote, minor daughter of Harriet L. Pote, deceased, be confirmed and his commission stand.

" 5. That D. S. Braumbaugh enter into a guardian's bond with two sureties to be approved by the court, in the sum of $1500.

" 6. That D. S. Brumbaugh and Dr. S. S. Brumbaugh enter into a bond, with sureties to be approved by the clerk, in the sum of $1000, conditioned that the estate of the minor, Mary Margaret Irene Pote, shall be well managed, and that she shall and will be comfortably and well cared for in every way, properly clothed, lodged, boarded, maintained and educated during nonage, at the proper and exclusive cost and expense of Dr. S. S. Brumbaugh, the putative father; and that the estate of Mary Margaret Irene Pote shall be invested at interest, and, at her majority, paid over to her, free from all charges and deductions for any account whatever.

" 7. And it is further ordered that John B. Pote settle with and pay over to, the guardian within a reasonable time the amount of the child's estate in his hands, or secure the same to be paid to the guardian with accrued and accruing interest at such time as may not unnecessarily harass him, the said John B. Pote, but in such way and manner as will promote the interest of the child.

" 8. That the guardian and putative father do and shall afford proper and reasonable facilities for the child's visits to its grandparents, and shall encourage and keep alive the love and respect it now has and bears for the parents of its mother.

"9. That the costs be paid by Dr. S. S. Brumbaugh, the putative father."

John B. Pote thereupon took this appeal and filed the following assignments of error.

1. The court erred in revoking the appointment of John B. Pote, as guardian of Mary Margaret Irene Pote, and in directing the record of the appointment of D. S. Brumbaugh to be amended and decreeing his appointment as guardian of Mary Margaret Irene Pote, in place of *M. Brumbaugh*.

2. The court erred in not revoking the appointment of D. S. Brumbaugh as guardian of M. Brumbaugh a minor child of Harriet Pote, deceased, and in not decreeing that the appointment of John B. Pote, as guardian of Mary Margaret Irene Pote had been regularly and legally made and that the same appointment should continue for the person and estate of said child.

*Reynolds* (*King* with him) for the appellant. The appointment of D. S. Brumbaugh, as guardian of "M. Brumbaugh," had no legal effect so far as this minor is concerned. The Act of 1855 made her the child of her mother, but she was in no way legally related to her putative father. The appointment of John B. Pote, properly made, was therefore prior in law. The law does not favor the appointment of a father as guardian for his minor child, and yet this was done, in effect, by the appointment of D. S. Brumbaugh. The whole question was decided upon the right of the putative father to the custody, his offers to maintain the child, his affection for it, and his superior advantages to care for it, when these were not involved in the issue between the appointments of D. S. Brumbaugh and John B. Pote: Benscoter's Appeal, 11 Luz. Leg. Reg., 63.

*G. H. Spang* (*Joseph S. Stayer* with him) for the appellee. The appointment of D. S. Brumbaugh was made first. The error as to the name of the minor was made inadvertently, in forgetfulness of the Act of 1855. The child was sufficiently described, and a mistake in the names of parties may be corrected in any civil proceeding, whether it arise through mistake of law or fact. The law recognizes the rights of putative paternity for purposes of nurture and education. It has been judicially determined that a putative father has a natural right to the care and education of his illegitimate child: Commonwealth *v.* Nutt, 1 Browne, 143 ; Same *v.* Addicks, 5 Binn., 520 ; Same *v.* Same, 2 S. & R., 174 ; Same *v.* Anderson, 1 Ash., 55 ; Moritz *v.* Garnhart, 7 Watts., 302. Dr. Brumbaugh having been legally appointed, the court could only remove him for

statutory causes. Mr. Pote having been *subsequently* appointed, the court could revoke the appointment because (1) Brumbaugh was already appointed; (2) The father of the minor had no notice of Pote's application; (3) Andrew C. Pote, the uncle, had no right to petition, the father being alive and within the jurisdiction of the court; (4) John B. Pote is a creditor to the minor's estate; and (5) he is of a different religious persuasion: Estler *v.* Estler, 1 Browne, 322; Senseman's Appeal, 9 Harris, 331; Act of March 29, 1832, §§ 5, 6, Purd. Dig., 411 p. 31, 32; Nicholson's Appeal, 8 Harris, 54.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

The appointment of a guardian is a final decision or decree, from which an appeal lies to this court, but the legal discretion of the Orphans' Court, in the appointment of a guardian of a person and estate of a minor, is not the proper subject of review: McCann's Appeal, 13 Wright, 304. The Orphans' Court must judge of the fitness of the person proposed, and the action of that court can be rejudged here, only when it disregards a positive rule of law in making the appointment: Senseman's Appeal, 9 Harris, 331; Gray's Appeal, 15 Norris, 243.

If, therefore, the appointment of D. S. Brumbaugh, as guardian of the minor child of Harriet L. Pote, deceased, was made in a proper proceeding by the Orphans' Court of Bedford county, and the discretion of that court was not exercised, in violation of any rule of the law, we must allow that appointment to stand, whether the selection made seems fitting or otherwise.

The minor is the illegitimate daughter of Harriet L. Pote, now deceased; she is of the age of seven years, and Dr. S. S. Brumbaugh is the putative father. Under the third section of the Act of 27th April, 1855, Pamph. Laws 368, she was legally and properly known by the name of her mother; her rightful name is now admitted to be Mary Margaret Irene Pote. Harriet L. Pote, the mother, and her child, lived in the home and family of her father until the 28th November, 1882, when she died, leaving an estate of $450 in the hands of said John B. Pote. This estate was what remained of $600, paid by Dr. S. S. Brumbaugh, in settlement of the bastardy; whether any criminal proceedings had been instituted, or any order of affiliation made, does not appear.

On the 10th January, 1883, Dr. Brumbaugh presented his petition in the Orphans' Court of Bedford county, where the minor resides, praying for the appointment of a guardian of the person and estate of " M. Brumbaugh," whom he describes

as "the minor child of Harriet L. Pote, deceased, late of Bloomfield township, in the county of Bedford," and of whom he declares himself to be "the father."

That the putative father was a proper person to present this petition, cannot, we think, be doubted. The putative father of an illegitimate child is entitled to the custody of the child, as against all but the mother; if the mother be dead, and the father a suitable person, it shall be taken from the maternal grand-parents and delivered to him. Commonwealth v. Anderson, 1 Ash., 55. To the same effect, are the English cases of Richards v. Hodges, 2 Saunders, 83; Burwell's case, Ventris, 48; Sherman's case, Ventris, 210, and Newland v. Osmer referred to in Burn's Justice, 234. In Moritz v. Garnhart, 7 Watts, 302, it was said, that although a bastard may not be looked upon as a child for any civil purpose, the ties of nature are respected in regard to its maintenance; the putative father, though not legally related to it, is so far considered its natural guardian, as to be entitled to the custody of it. The learned Chief Justice LEWIS delivering the opinion of the court, after a full discussion of all the cases, concludes as follows: "It may be safely said, then, that the law recognizes the rights of putative paternity, for purposes of nurture and education." We may allow large abatements, perhaps, from the estimate which the law makes in respect of the natural tenderness of parents for their own offspring. in cases like this, but it is certain that the rule referred to is grounded in that consideration. If, then, Dr. Brumbaugh, at the death of Harriet L. Pote, was legally entitled to the custody of this child, he was a proper person to petition the court for the appointment of a guardian, and no other person held such a legal relation to the child, as under our practice, entitled him to notice of the application. The petition contained a misnomer of the minor, but she was otherwise accurately described, as the minor daughter of Harriet L. Pote, deceased, of whom S. S. Brumbaugh was the father, and it is not alleged that such language could apply to any other. A petition was subsequently presented to the court, stating that the misnomer was the result of mistake or inadvertence, and praying for leave to amend; the power of the court to permit the amendment was undoubted, the misnomer was corrected, and the record amended.

Prior to the amendment, the record certainly could not be regarded as a nullity, the name only was mistaken, the description of the person intended was otherwise full and accurate. It would certainly not be pretended that Brumbaugh was not the guardian, merely because of the misnomer; if the estate of the minor had come into his hands, not only would he have been held for it, but his responsibility could have been

visited upon his sureties.   The identity of the person of the minor was fixed by the terms of the petition, and the subsequent amendment was an adjudication that the misnomer was a blunder.   If it had appeared on the hearing of the application to amend, that the name, " M. Brumbaugh," had been intentionally and fraudulently used, the amendment would have been refused ; and as there is a power vested in every court to protect and vindicate itself against, and to correct, its own mistakes, occasioned by the artifice and fraud of suitors practiced upon it, the appointment might have been revoked.  But the court found no facts to justify such a conclusion, and we are not prepared to say the court was wrong ; the amendment was allowed, and upon a re-argument, in which the whole case was considered, and the claims and qualifications of the several applicants for the guardianship were canvassed, the court confirmed the appointment of Brumbaugh.   The discretion of the court was exercised, when the record was right, and when the several persons suggested for guardian were in court.

No rule of law has been violated in this proceeding, the record is formal and regular; we cannot review the discretion of the court in the selection made, and we must allow the appointment to stand.

It follows, of course, that the appointment of John B. Pote is null and void, and must be revoked.   The petitions were several and adverse, not joint, and the two appointments cannot stand together : Estler *v.* Estler, 1 Browne, 322.

The decree is affirmed, and the appeal dismissed at the cost of the appellant.

STERRETT, J., dissented.