[No. 3610.   October 5, 1931.]

[Rehearing Denied November 17, 1931.]

CROSBY et ux. v. HARRAL et ux.

[4 P. (2d) 655.]

Gilbert & McGhee, of Roswell, for appellants.

Judson G. Osburn and O. O. Askren, both of Roswell, for appellees.

## OPINION OF THE COURT

HUDSPETH, J.

On the petition of Steve Crosby and Mary L. Crosby, his wife, for the adoption of Mary Mildred Harral, a decree of adoption was entered.   The protestants, Edgar F. Harral and Rosa J. Harral, his wife, appeal.

The petitioners are the foster parents of the mother of the infant, and the appellants are the paternal grandparents of the infant.   The court found that Mary Mildred Harral was the infant daughter of Phelps Harral and Elizabeth Harral; that prior to February 8, 1929, the date of the filing of the petition, the parents of the in-

fant had abandoned her; that immediately upon being advised of the filing of the petition for adoption of the infant by the Crosbys, the appellants employed an attorney to represent them and filed a protest in the court against the petition of the said Crosbys, and also filed a petition for the adoption of the child by them, the said appellants; that the mother of the child filed her consent to the adoption of said child by the Crosbys and that the Crosbys were fit and proper persons and able and willing to care for, culture, and rear the child, and that they had had the custody of the child since she was abandoned by the mother, a period of about eighteen months; that the state board of public welfare was duly notified, as required by law, of the application of said petitioners for the adoption of said child, more than six months prior to the date of hearing and the filing of the report of said state board of public welfare, and said board of public welfare, through its bureau of child welfare, filed its report in writing in the court giving its reasons why said petition filed by the said Crosbys should be granted. It further appears from the evidence that the father of the child, Phelps Harral, abandoned his family when the child was only a few months old, and that his whereabouts were unknown at the time of the hearing. The mother of the child had been granted a divorce and awarded custody of the child before she filed her consent to the adoption by the petitioners.

It appears that the bureau of child welfare filed two reports, the first within six months from the filing of the petition for adoption, signed by Margaret Reeves, director, stating that two of their representatives had personally looked into the matter and reporting certain facts, but requested further time in order that the wishes of the mother of the child, who had remarried, might be ascertained. The second report, which was filed after the expiration of the six months' period, was signed, "Margaret Reeves, Director," by an employee of the bureau on telegraphic advice from Miss Reeves while she was in New York attending the conference of child welfare workers called by President Hoover. A representative of the bureau of child welfare was present at the hearing before

the court and the bureau was represented by a reputable member of the bar.

Appellants maintain that the court had no jurisdiction to enter the decree of adoption because the board of public welfare had not reported to the court, and that the purported report of the bureau of child welfare was not signed by the director and was filed more than six months after the filing of the petition for adoption.

The state department of public welfare was created by Laws 1921, c. 117, 1929 Comp. c. 126 (sections 126-101 to 126-109). The first section provides:

"There is hereby created the state department of public welfare to consist of a state board of public welfare and the several divisions and bureaus to be created and organized by said board as provided in this act."

By section 6 of the act (section 126-106, 1929 Comp.) the board is authorized to appoint a director of child welfare, and by section 8 of the act (section 126-108, 1929 Comp.) it may authorize any division or bureau created by said board to appoint or employ such assistants and employees as said board or said divisions or bureaus, with the approval of said board, may deem necessary. The state board of public welfare consists of five members, who serve without compensation.

Laws 1925, c. 5. § 2, 1929 Comp. § 2-108, provides that upon the filing of a petition for the adoption of a minor child the district court shall notify the board of public welfare, transmitting to the board a copy of the petition. It is made the duty of the board to verify the allegations of the petition, to investigate the condition and antecedents of the child for the purpose of ascertaining whether the child is a proper subject for adoption, and to make appropriate inquiries to determine whether the proposed foster home is a suitable one for the child, and to submit to the court a full report in writing within six months, giving its reasons why the petition should or should not be granted by the court, and further provides:

"No petition shall be finally granted until the child shall have lived six months in the proposed foster home, nor yet until the

recommendations of the state board of public welfare shall have been received by the district court, provided that the six months' period before final adoption may be shortened by the district court, but only after notice of application for reduction of time shall have been given to the said board and hearing· thereon had, at which the said board shall be represented and heard."

The purpose of our adoption statutes is to promote the welfare of children by securing to them the benefits of a home and parental care. The tendency of the courts is away from the narrow and technical construction of adoption statutes appearing in some of the early cases. · Blanchard v. State ex rel. Wallace, 30 N. M. 459, 238 P. 1004; 1 C. J. 1373.

Petitions for adoption are referred to the board of public welfare in order that the court may have the benefit of the investigations made by the officers and employees of the board and to the end that minors may not be given into the custody, by adoption, of unfit parents. The bureau of child welfare, organized by the board of public welfare under the provisions of the statute, makes investigations and reports to the courts in this class of cases, under the general supervision of the board of public welfare. It was not the intention of the Legislature that the five members of this board, who serve without pay and who usually reside in different parts of the state, should assemble and act on each petition for adoption. Its approval of a petition is not necessary in order to give the court jurisdiction; in fact, the court may grant a petition for adoption notwithstanding an adverse report thereon by the board. 1929 Comp. § 2-109. The primary service performed by the board is the gathering and reporting of information to the court. The recommendations are secondary. When these services are performed by subordinates in the bureau of child welfare, it is a substantial compliance with the statute. The fact that the six months' period elapsed before the final report was filed did not affect the jurisdiction of the court.

Appellants maintain that, even though all things are equal, the grandparents of the child have the better right thereto, and it should be given to them rather than to appellees.

1929 Comp. § 2-104, provides a legitimate child cannot be adopted without the consent of its parents, if living together, and if legally separated, the consent of the parent having legal custody of the child must be obtained. The mother of this child was awarded the legal custody of the child and she filed her consent to the adoption of said minor by the appellees. The grandparents are given no right by statute. In Ex parte Wallace, 26 N. M. 181, 190 P. 1020, 1022, Mr. Justice Roberts, speaking for the court, said:

"We believe it to be universally conceded that the parents have no property right in their children. The right which they have is a natural right, but in all cases the state is parens patriae to the child, and it has power to, by legislation, control the right of the child to inherit, to take it from its parents, and give it into the custody of others, to determine what is for the best interests of the child, and that which will promote the welfare of the state."

The trial court properly made the welfare of the child the lodestar of his decision, and we find no merit in this contention of appellants. Pra v. Gherardini, 34 N. M. 587, 286 P. 828.

■ Appellants contend that the court erred in holding petitioners were fit and proper persons to have the care and custody of the child.

In this case the court's investigation was thorough. Both parties were represented by counsel, and more than a score of witnesses were examined. The record is voluminous, consisting of more than three hundred pages. All of the findings of fact by the court are supported by substantial evidence, and, under the well-established rule, such findings will not be disturbed. Pra v. Gherardini, supra; Hase et al. v. Summers et al., 35 N. M. 274, 295 P. 293; New York Life Ins. Co. v. Martin, 33 N. M. 617, 273 P. 916.

Finding no error in the record, the decree of the court will be affirmed; and it is so ordered.

BICKLEY, C. J., and WATSON, J., concur.

PARKER and SADLER, JJ., did not participate.