Appellants, Clarence Crook and Bessie Crook, his wife, petition for the adoption of Billy Dee Hogue, a two year old minor. Upon hearing and objection of natural mother, Geraldine Walker, appellee, the petition was denied, and petitioners appealed.
Appellants filed their petition for adoption, alleging in substance that the child, Billy Dee Hogue, was an illegitimate and abandoned child; that they then had the care and custody of said child and were able to provide a suitable home for it; and that it was for the best interest of said child that the petition for adoption be granted. There had been no prior adjudication that the child was neglected or abandoned, nor was any consent to adoption obtained from the natural mother. Appellee, the natural mother of said child, filed her answer denying that the child was abandoned, and alleging that she was able and willing to furnish proper care and support, and prayed the petition be denied and that she be awarded the custody of the child who for some three or four weeks had been in the custody of petitioners with her consent. The cause was referred to the Bureau of Child Welfare in due course, and the Bureau submitted its report to the court recommending that petitioners be allowed to adopt. It does not appear that the bureau investigated the conditions surrounding the natural mother, but their report only went to the suitableness of the home of petitioners, and in support of petitioners' claim that they were fit and proper persons to have the child through adoption. The case was tried by the court, and the court made findings of fact, some of which appellants contend were hard to reconcile with the decree of the court in denying petitioners' prayer. It appears from the testimony that appellee had been employed by the appellants at a small weekly wage; that they gave her room and board for herself and child for a month or more; that shortly after the employment began appellee left appellants' home, leaving the child there, and she was not heard from by appellants for approximately three weeks, and that appellants during that time had the care and custody of the child, appellee contributing nothing to its support; that appellants were fond of the child and gave it every care and attention during the *Page 440 
time that the mother was absent, and the child, as they claim, thus abandoned. That shortly after appellee left the home of appellants she received a letter from the attorney for appellants suggesting that she sign a document giving her consent to the adoption of the child by appellants. There is a conflict of testimony as to whether the petitioners were good to the child, but the court found for them in this respect, but, in addition, found that appellants at one time said that if the mother would pay a board bill of $16 and show that she was able to support the child it would be returned to her. Appellants concede that the discretion of the trial court in awarding custody cannot be disturbed if supported by substantial evidence, but seem to take the position that, although there may be substantial evidence to support the judgment, yet, in view of the court's findings, the judgment should not stand; that is to say, appellants contend that the court cannot find that the best interest and welfare of the child will be served by granting the petition and permitting adoption, and at the same time arbitrarily permit the natural tie of kindred and mother love to determine its judgment. It seems to us that appellants are in error here, and this error is predicated upon a wrong interpretation of the trial court's use and understanding of the "welfare" and "interest" phrases found in its opinion.
It is well settled that this court will not disturb findings of fact of the trial court which are supported by substantial evidence. Crosby et ux. v. Harral et ux., 35 N.M. 575,4 P.2d 655; Pra v. Gherardini, 34 N.M. 587, 286 P. 828.
We think appellants misinterpret the trial court's findings of fact. Appellants interpret the findings as requiring judgment allowing adoption. We do not believe that the court's findings, when taken as a whole and read together in connection with the testimony, justify such construction. Appellants point out that the trial court must have decided the issues here against appellants and in favor of appellee, the mother of the child, because of the ties of blood and relationship rather than under the rule that the paramount issue should be and is the best interest and welfare of the child.
Appellants call our attention to the case of Crosby et ux. v. Harral et ux., 35 N.M. 575, 4 P.2d 655, 656, where Mr. Justice Hudspeth said in sustaining the lower court's judgment in an adoption matter: "The trial court properly made the welfare of the child the loadstar of his decision." But we find there no inconsistency with our holding here. The welfare of the child is not to be determined by and does not rest altogether upon economic and financial considerations and factors.
Isolated excerpts from the court's findings, which were informal and dictated into the record during and at the close of the case, would in a measure support appellants' contention, but a careful reading of all the findings and statements of the court in explanation of the judgment it gave nullifies such interpretation. The *Page 441 
evidence supports the findings of the court that the natural mother of the child, though she might temporarily have abandoned it for a few weeks in December, 1934, immediately got in touch with petitioners who then had its custody, and endeavored to regain possession; and, that at the time of the trial, and at all times thereafter, the mother was living with relatives and was able to take care of the child, although perhaps "not as well as" petitioners. The court further found that although there was an abandonment for "three or four weeks or about a month * * * but since then the status has changed," and the court further states in its findings and in explanation of its decision that had the temporary abandonment continued for any length of time the explanation offered by the mother of the child might not have applied. The court also took notice of the fact that the mother came immediately to claim her child when she was advised that the Crooks desired to adopt it, and that she was then a fit and proper person to have its custody.
Appellants rely upon the case of Pra v. Gherardini, supra. In that case the natural mother of the child voluntarily delivered and gave her child to her sister and brother-in-law when it was about one month old. The mother contributed nothing by way of food, clothing, or money toward the support of the child. She always treated it as though it were the son of her sister; it was some nine years later that the mother decided she wanted the child and made her first claim to it. The foster parents had become greatly attached to the child in these years. The trial court held, and was by this court sustained, that even a natural mother, though otherwise a fit and proper person, under the circumstances of that case, could not get back her child, saying, "The best interests of the child requires that he be left with respondents." We there disapproved of the rule sought to be invoked, viz., that if the mother be a fit and proper person she would have the paramount right to the child, notwithstanding the best interests of the child demand otherwise. And this doctrine still stands undisturbed. But in the case at bar we have a different situation, and a case that carries none of the compelling reasons that supported the opinion in the Pra Case. We have here no voluntary parting with possession or gift of the child; there are no long years of custody in appellants who, by the conduct of the natural mother, had been led to believe that the child they had nourished, fed, clothed, and loved from its very infancy would never be snatched from the cradle of their affections. Three weeks is scarcely time enough for a stranger's love and attachment to become so great that the rights of the natural mother, though poor and jobless, but otherwise a fit and proper person, should be denied.
This court has heretofore said a parent has no property right in their children, and the paramount issue is the welfare of the child. Ex parte Wallace, 26 N.M. 181, 190 P. 1020; Crosby et ux. v. Harral et ux., 35 N.M. 575, 4 P.2d 655; *Page 442 
Pra v. Gherardini,34 N.M. 587, 286 P. 828. And yet all courts recognize that in determining the right to the custody of a child under adoption proceedings that the welfare and best interest of the child is not measured altogether by material and economic factors — parental love and affection must find some place in the scheme and we all know this item covers a multitude of weaknesses. The trial court by its findings recognized the mother to be, notwithstanding her temporary abandonment of the child prior to the proceedings being filed, a fit and proper person and one who was attached to and wanted her child. The trial court probably made an unhappy choice of words when it said in one of the findings that "the appellants were more nearly qualified under the rule that the welfare of the child is paramount," but it is clear, by following the court's entire statement, that by "welfare" it meant financial and economic only, as distinguished, for example, from spiritual, filial, or social. And the court makes it clear that this, its interpretation, is the measure that it understands is applied by the courts when they use the term "welfare of the child." For example, the court in explaining its feeling and finding that this child should go to its natural mother, under the circumstances in this case, pointed out that:
"Very few of us but that somebody could come along and say, `I am in a whole lot better position to give that child educational advantages and training than the mother or father. * * *' They might take some of your children. * * * They might have taken mine, because I know of men with better facilities who might be superior intellectually, morally, etc., to raise a child, but the ties are not the same."
The court's finding therefore that the natural mother, appellee, at the time of the trial has a home for the child with her sister and brother-in-law, and that they are amply able to assist the mother in caring for the child, and there being findings as to her general and moral fitness, leads us to the conclusion that the court in using the term "welfare of the child" used it in the sense and had in mind the economic and financial aspect or definition only.
Finding no merit in appellants' contention, the judgment will be affirmed.
It is so ordered.
HUDSPETH, C.J., and SADLER, BICKLEY, and ZINN, JJ., concur.