## Relinquishment of Baby Boy Z-1

*Helen Arseniu White*, for petitioner.

ZIEGLER, P. J., October 5, 1973.—On June 1, 1973, petitioner, who is over 18 years of age, filed her petition, pursuant to section 302 of the Adoption Act of July 24, 1970, P.L. 620, 1 PS §302, for permission to relinquish forever all parental rights to her child. By her petition, she alleged that child was then in the exclusive care of adults who had filed report of intention to adopt pursuant to section 331 of said act. Such report of intention to adopt had been filed with the court on May 22, 1973, and consent by said adults to acceptance of custody of child was filed with the court on June 1, 1973.

After hearing on June 19, 1973, we find that petitioner was never married; that child was born to petitioner on April 25, 1973; that the father of child resides in the same community as petitioner, is not married, is not related to petitioner, is approximately the same age as petitioner and does not know that petitioner became pregnant, that child was born to him or that this proceeding is in progress; and that petitioner did not identify the father of child upon registration of child's birth.

We would have granted petitioner permission to relinquish forever her parental rights to her child without hesitation prior to decision of the Supreme Court

of United States in Stanley v. Illinois, 405 U.S. 645, 92 S. Ct. 1208 (1972). There, although Joan Stanley and Peter Stanley never married each other, they lived together intermittently for 18 years during which they produced three children. Upon Joan Stanley's death, the children were declared wards of the State and placed with court-appointed guardians under Illinois statute which provides that children of unwed fathers become wards of the State upon the death of their mother. The Supreme Court held that the denial to unwed fathers of the hearing on fitness accorded to all other parents whose custody of their children is challenged by the State constitutes a denial of equal protection of the laws under the Fourteenth Amendment.

The Supreme Court of Pennsylvania had an opportunity to determine whether the father of an illegitimate child has the right to be heard on the mother's petition for permission to relinquish forever her parental rights to her child under sections 301 and 302 of said act: Watson Appeal, 450 Pa. 579, 301 A. 2d 861 (1973). There the Family Division, Adoption Branch, of the Court of Common Pleas of Philadelphia, had granted permission to a 14-year-old single mother to relinquish her child to an agency. The mother later married the father of her child and petitioned the same court to vacate the decree of voluntary relinquishment contending that her relinquishment was not voluntary, intelligent and deliberate, the standards for valid relinquishment established by Susko Adoption Case, 363 Pa. 78, 69 A. 2d 132 (1949), and that she had been denied due process below. The Supreme Court dismissed her contentions but remanded the matter to the court below to consider the impact, if any, of Stanley. The court stated that Stanley did not apply to the case but went on to state that it did not reach

the issue raised by Stanley since the unwed father had not challenged the voluntary relinquishment procedure. Although the rights of the natural father were not before the court for determination, we suspect that remand suggests that the father of an illegitimate child has certain rights in a relinquishment proceeding. In order to determine whether a father is entitled to notice and hearing, we must first determine whether the father has any substantial rights to protect by opportunity to be heard. Our courts have held that a father does have substantial rights. As to custody upon death of the mother, the putative father is entitled to custody against all others if he is a suitable person: Pote's Appeal, 106 Pa. 574 (1884); Commonwealth ex rel. Kevitch v. McCue, 165 Pa. Superior Ct. 49, 67 A. 2d 582 (1949). As to custody upon voluntary relinquishment of child by mother to agency for adoption, custody will be awarded to the acknowledged father of child in habeas corpus proceeding where father is a suitable person and able to provide a home and proper care and where child's welfare would be best served by granting custody to father: Commonwealth ex rel. Robinson v. Ziegler, 35 D. & C. 2d 55 (1964), affirmed per curiam at 205 Pa. Superior Ct. 29, 206 A. 2d 324 (1964). As to visitation, a court may, in appropriate circumstances, award a putative father the privilege of visiting his illegitimate child in the custody of the mother: Gwiszcz Appeal, '206 Pa. Superior Ct. 397, 213 A. 2d 155 (1965). See other Pennsylvania cases cited in 37 A. L. R. 2d 882, 51 A. L. R. 2d 497 and 15 A.L.R. 3d 887. Foregoing authorities suggest other substantial rights. A fourth might be that of being privy to proof that the mother of his child relinquishes voluntarily, intelligently and deliberately.[1] A fifth might

1. To this end, it is recommended by contemporary juvenile justice spokesmen that law guardians be appointed for mothers

be that of participating in the selection of alternative for best interests and welfare of his child.[2] Without knowledge of existence of his child, a father could not consider welfare of his child. Without notice, he could not participate in decision. Without hearing, he could not contribute fatherly counsel. Although section 411 of said act does not require consent of, or notice to a father of an illegitimate child in relinquishment or adoption proceedings,[3] Stanley leads us to the conclusion that a natural father is denied equal protection of the law under the Fourteenth Amendment if there is no statutory provision for notice nor opportunity to be heard in relinquishment proceedings.[4] Similar

---

who may lack resolve by reason of tender years, mental incapacity, parental dominance or otherwise. It is belived that law guardians would advise alternatives to relinquishment and adoption, screen hesitant mothers and promote finality of such proceedings by fully advising mothers and by memorializing the voluntary, intelligent and deliberate resolution of mothers.

2. "The putative father should be given the opportunity to present his plan, not for his benefit, but for the child's . . .": Marcus, Stephen H., Equal Protection: The Custody of the Illegitimate Child, 11 Journal of Family Law 1 (1971).

Although there may be many good reasons why mothers should not be disturbed by fathers for visitation and custody while they furnish adequate custody, the same reasons should not necessarily prevail when mothers elect to abdicate motherhood. Then, abdication hints of lack of emotional capacity to decide for the best interests and welfare of children.

In addition to the right of fathers to assist in the selection of alternatives, we suggest that children whose welfare and best interests are at stake have a right to have their fathers participate. Such right of children illustrates the trend in juvenile justice of appointing for children law guardians with no duty nor responsibility to others.

3. Exception is when father and mother have married.

4. We realize that we may encounter much uncharted waters in implementing our interpretation of Stanley into relinquishment

conclusion was reached by the Orphans' Court Division of the Court of Common Pleas of Erie County in Kevin Marshall Polaski, 56 Erie 55 (1973). There, the court held, based on Stanley, that father who married mother after mother relinquished her rights to her child to an agency was entitled to custody and that portion of section 411 of said act, dispensing with consent of father of child under certain circumstances, was unconstitutional.[5]

Here, we recommended to counsel, who represents petitioner and proposed adopting parents, by memorandum of June 26, 1973, that she investigate the possibility of having the natural father join in the petition for relinquishment. Since we have heard no more, we assume that she elected not to alert him to the existence of his child. Had he joined or had he been given notice, we could proceed without considering constitutionality of section 411 of said act. However, it is our desire and duty to afford due process and to promote the finality of ultimate adoption. Without joinder or notice, there can be no due process, so we shall make the following

## ORDER

Now, October 5, 1973, petition is dismissed. Exception is noted to Helen Arseniu White, Esq., attorney for petitioner. All papers pertaining to this proceeding shall be kept in the files of the court as a permanent record thereof and withheld from inspection except on an order of court granted upon cause shown.

---

proceedings. However, we have followed what we believe to be the direction Stanley has given us with full confidence that all children should be afforded all benefits available from both parents.

5. The court also vacated the voluntary relinquishment.