Sewall, J.
The rights of the putative father are not brought into question by this process. The case, as it stands on the record, gives occasion to the single inquiry only, whether this infant shall *107 oe in the care and custody of his mother, or set loose in the world without restraint or protection. On such a question I cannot hesitate in my opinion that the plaintiff should become nonsuit.
Sedgwick, J.
So.far as respects these parties, the question is, singly, whether a mother has a right to the custody of her natural child. I have no conception that an infant, in the arms of its mother, can be considered as “ imprisoned, confined, or held in duress,” within the intention of the framers of the statute which prescribes this writ. The marriage of the natural parents gave to the husband, in a certain degree, a right to the custody of the child. But the divorce, which dissolved the marriage, annulled that right, and the child remained with the mother in .the same manner, and under the same right, as before the marriage.
Parsons, C. J.
As the putative father has undertaken the pros ecution of this action, I am disposed to consider his claims to the custody of the plaintiff as if they were regularly before the Court.
In legal contemplation, a bastard is generally considered as the relative of no one. But, to provide for his support and education, the mother has a right to the custody and control of him, and is bound to maintain him, as his natural guardian. In a moral view, he is considered as the child of his mother so far, that their intermarriage is unlawful, and any sexual intercourse between them would be incestuous. And the stat. 4 and 5 Ph. & M. c. 8, against carrying off and marrying maidens not sixteen years of age, has, for the protection of the child, been considered as extending to a not ural daughter, in fact under the care of the putative father. The natural guardianship of the mother devolves on her husband on the marriage, in the same manner as an executorship or a guardianship derived from * the authority of the Probate [*111 ] Court; and the husband’s power, depending on the marriage, ceases on its dissolution. It is not like the right to the wife’s chattels, which by the marriage are vested in the husband, and survive to him. Whether a putative father, from whose actual custody and care his natural daughter has been unlawfully taken by a stranger, can maintain a writ de homine rephgiando to regain his custody, is a question different from the present. Perhaps he is within the reason of the case of Rex vs. Cornforth & Al., (1) but it is unnecessary now to determine this question. As to the right of the present plaintiff, I concur with my brethren. (a)

Plaintiff nonsuit.

 2 Stra. 1162.

 Somerset vs. Dighton, 12 Mass. Rep. 383. — Petersham vs. Dana, 12 Mass. Rep 429. — Ex parte Anne Knee, 1 N. R. 348. — Rex vs. Sope, 5 D. & E. 278. — Rex vs. Hopkins, 7 East, 578. — Vide 5 East, 524, note.— Commonwealth vs. Addicks, 3 Serg & R. 333. — Commonwealth vs. Nutt, 1 Br. 143.