## MARCELLINA BUSTAMENTO *v.* JUANA ANALLA.

HABEAS CORPUS FOR CHILD, WHAT CONSIDERED ON.—On *habeas corpus* brought for the purpose of transferring a minor child from one custody to another, the welfare of the child is considered, as well as the rights of the respective parties to its custody.

SERVANT'S GIFT OF HER CHILD TO HER MASTER.—A gift, in consideration of the release of a debt, made in 1847, by a servant to her master of her illegitimate child, of which he was the father, that he might maintain and educate such child "as a legitimate father," gave him no right to treat the child as a peon.

MOTHER'S UNFITNESS FOR CUSTODY OF CHILD IMMATERIAL, WHEN.—Where a mother sues out a writ of *habeas corpus* to obtain the custody of her minor child, illegally held as a peon or servant by a stranger, the rejection of evidence of the plaintiff's unfitness to have the custody of such child is not error as against the defendant, such evidence not being material to the issue between the parties.

WILLINGNESS OF CHILD TO REMAIN IN SERVICE.—The testimony of the child in such a case, that she is willing to remain in the defendant's service, is not satisfactory evidence.

ILLEGITIMATE CHILD, MOTHER'S RIGHT TO CUSTODY OF.—The mother of an illegitimate child is its natural guardian, and entitled to its custody, until deprived of that right by the appointment of a lawful guardian.

APPEAL from the first judicial district. The opinion states the case.

*M. Ashurst,* for the appellant.

*T. D. Wheaton,* for the appellee.

By Court, DEAVENPORT, C. J.:

Juana Analla sued out a writ of *habeas corpus* against Marcellina Bustamento, before Chief Justice Deavenport, and district judge of the first judicial district. Petitioner for the writ alleged that she was the mother and natural guardian of Catalina Bustamento, a minor, under the age of twenty-one years; that as such mother and guardian she was entitled to the assistance and services of said child, and that said Catalina Bustamento was illegally detained from her by Marcellina Bustamento in her house in the city of Santa Fe, under a pretended claim of holding her as a peon or a servant. The above allegations were set forth in a petition for the writ, subscribed and sworn to in

accordance with the provisions of our statute. On the return of the writ on the day fixed for its return, all the parties appeared, and the body of Catalina Bustamento was produced, in pursuance to the requirements of said writ. Marcellina Bustamento filed the following return to said writ, alleging that Catalina Bustamento was not illegally detained by her, but of her own free will and accord remained with her, having been raised since she was a small girl until her present age by her in her house. She further averred that said Catalina was the child of one Carpio Bustamento and Juana Analla, and that after her birth the said petitioner parted with and surrendered the care and custody of the said child to Carpio Bustamento, as would more fully appear by reference to document marked Exhibit A, thereby made a part of her return. And she further averred, that said Carpio Bustamento, the father of Catalina, gave the child to her; and that with the consent and at the request of the said Carpio Bustamento, she kept and detained the said child; and she further averred that Juana Analla was a woman of immoral habits and conduct, and unfit to have the care and custody of the said Catalina. After hearing the testimony in the case, the district judge decreed that said Catalina Bustamento be discharged out of the custody of the said Marcellina Bustamento, and delivered to the said Juana Analla, from which decree Marcellina prayed an appeal to this court, which was allowed.

As this case was tried by me in the court below, I have felt a deep anxiety and much interest in arriving at just legal conclusions in the investigation of the principles which should conduct the mind to a correct opinion. Probably there is no class of cases which exercise the judicial mind more feelingly than that where parents come before a judge, demanding restoration of their children to them upon writs of *habeas corpus.* It carries with it the force of nature's appeal to the heart, seconded by all the influences which the relation of parent and child so naturally suggests. This is a peculiar case, as will appear from the allegations in the mother's petition, the return made by defendant to the writ, and the evidence in the case. The mother alleges

that her child (which the proof shows was illegitimate) is illegally detained by defendant under a pretended claim that she holds her as a peon or a servant. The first part of defendant's return denies that the child is unlawfully detained, but avers that she voluntarily remains with her, and then she immediately avers that she keeps and detains her by virtue of document A, and the gift by Carpio Bustamento to her, and that such keeping and detention of the said child is with the consent and at the request of the child's father, said Carpio Bustamento. It must be kept in view that the defendant, in no part of her return, denies the allegation in the plaintiff's petition, that she detains the child under a pretended claim of a peon or servant. She does not put in issue the plaintiff's allegation touching the capacity or condition in which she detained the child, whether as a peon or servant, or a free person not subjected to the condition of service. She evades showing the judge, either by any allegation in her return or by proof, in what capacity she held her—whether as a free person, or one bound to do service as a peon or a servant. She bases her right to the detention of the child upon document A and Carpio Bustamento's gift.

The failure on the part of the defendant to respond as to the manner in which she was alleged by plaintiff's sworn petition, to hold her child as a peon, is a circumstance which very likely had much weight in the exercise of the discretion of the judge who tried this case below. It will be found in reviewing the authorities that in cases of this kind the welfare of the children is regarded as well as the right of the parties contesting their claim to their care and custody. There is not the slightest doubt, that when a contest is had concerning the rights of parties to minors, the courts have examined into the fitness of the parties to take charge of them, and in very many cases they have been given to the party who had not the higher legal right. But in all those cases it will be found that there were strong controlling circumstances which overrode the legal right. It is assigned as error in this case that the district judge erred by sustaining a motion to reject testimony offered to

prove plaintiff's unfitness to take the care and custody of her child. It is not contended by this court that such testimony is not competent in most cases of this kind, but the question to be settled was an error in this particular case. This case stands upon a different footing from those usually met with in the books. The mother in this case seeks to rescue her child from the defendant, who, she alleges, holds her child as a peon or a servant under some pretended claim. Her aim is not alone to gain possession of her child, but also to emancipate it from servitude.

The defendant insists upon her right to detain the child, without saying whether free or bound to do service. It is known that what is commonly called the system of peonage exists in this country. If the sworn allegation of the mother that her child was held and detained from her as a peon or servant by defendant under some pretended claim was true, (and said allegation is not denied by defendant as to the character in which she was held), what had the fitness or unfitness of Juana Analla to take charge of the child to do with the real matter in issue ? The real charge is that defendant restrained her child of her liberty as a peon. Defendant responds by alleging that she has a right to detain her by virtue of the judicial decree of Manuel Armijo, justice of the peace, marked A, and the gift of Carpio Bustamento, her father, but does not allege whether she claims her as a peon or not. Document A is in the words and figures following:

"In the county of Bernalillo, on the twenty-sixth of February, 1847, appeared before me, Manuel Armijo, justice of the peace, Don Carpio Bustamento, and his servant, Juana Analla, both resident of said county, and stated that in consideration of their wish to legalize their accounts they would enter into a trial (*juzgado*), and I, the present judge, adjusted the account and found that she was owing one hundred and forty-four dollars at the rate of bits, and by an agreement which they had of a *léses*. Instigated by the mother of Analla, Carpio Bustamento pardoned her for the amount of forty-four dollars, and from that date she only owes one hundred dollars, and on consideration that from

the earliest infancy of Catalina and George they have been raised in the house of the master, from this date the mother gives them to Bustamento, that he may maintain and educate them as a legitimate father who will be responsible before God and man; and as the mother has summoned him, agitating impertinent demands, from this time forward she is to make no further complaint, nor have any hearing in any future trial. All of which I noted down, and Analla swore to it, and I, the judge, fixed my judicial decree this twenty-sixth February, 1847.

"Manuel Armijo, Alcalde."

It is under the above document, and the gift of the master of Analla and the putative father of the illegitimate child, that defendant leases her right to detain this child from the servant-mother Analla. From the document it is apparent that in consideration that the master would release his servant of the sum of forty-four dollars, and in consideration that her two children had been raised in his house, the two children having been begotten by himself, Analla is induced to give these two children to him to be maintained and educated, as their legitimate father, and to stand responsible for them before God and man; and Analla the servant, is further bound never to bring against him any demands. Give this document whatever construction it may bear, it does not give the children to Bustamento as peons or servants. He was to maintain and educate them as their legitimate father. The poor, crushed servant-mother, indebted to the putative father, exhibits her maternal affection to them by requiring that he should come under the obligation to maintain and educate them as their legitimate father. She afterwards finds one of her children, thus delivered up to their putative father, in the possession of a stranger, held under a pretended claim as a peon or servant. Can any one say that the poor mother can not again recover the possession of such child, and relieve it from its servile condition? The defendant nowhere denies that she detains the child as a peon or servant. She introduces no testimony to negative this allegation in the petition of the mother. The object of the writ in this case

was not only to regain possession of the child, but to discharge it out of its alleged condition of servitude.

The judge below had a discretion to exercise in the trial of this cause, in admitting testimony touching the fitness or unfitness of the mother to take care of the child, according to the peculiarities of the case. His first object was to discharge the child out of the servile custody of the defendant, and it did not lie in the mouth of the defendant to introduce testimony against the mother's fitness to be guardian of her own child, until she had shown, either by a denial in her return, or by proof, that she detained the child in the servile condition alleged. This was a contest between the plaintiff and the defendant, as to their legal rights to this child. The plaintiff charges that her child is held by defendant as a peon or servant under some pretended claim. The defendant returns by setting up her claim under document A and gift. That is the issue. It is whether the mother has a right to her child, or the defendant has a right to hold the child as a peon or servant under document A and gift. The testimony which defendant complains that the judge ruled out was as to the fitness of the plaintiff to have the care and custody of the child. Was this any injury to the defendant? Can she be heard to complain of it in this court? Suppose this testimony to have been introduced, would it have changed the decree so far as she is concerned? Would it have strengthened her claim to the child? Would it have given the child to her if found to be true? Not at all. Then, if it follows, that from the evidence in the case the decree as against appellant would have followed that said child should be discharged out of her possession as not entitled to it, what right has she to complain that the court did not go into a collateral issue as to whose custody the child should go into? We hold that, so far as defendant is concerned, this species of testimony is only allowed to aid the judge as chancellor to make a proper disposition of the child. It is also allowed in cases where disputes between the father and mother arise as to the custody of their children, and this kind of testimony is introduced for the benefit of the children, so as to aid the chancellor in making

the best provision for them. If there was any error, it was only error as against the child, and not against appellant.

Another error assigned is, that the judge erred in not allowing the child to answer whether she is willing and anxious to remain with the defendant. From the peculiar nature of the allegation of the mother that her child was held as a servant, and not denied by the defendant, the judge refused to allow such testimony. Such testimony can not be deemed satisfactory when a child is a servant under the control of the mistress or master. The proof shows that Analla was the mother of the child in question, and that she was illegitimate. It is laid down that the mother is the natural guardian of her illegitimate children, and she is bound to maintain them: *Wright* v. *Wright*, 2 Mass. 109. In this case the principle is established, that the mother of a bastard child is entitled to the custody of it, and should hold as against a putative father, after a marriage and divorce had: Id.

The general principle applicable to cases of this kind is laid down by Lord Mansfield, in *Rex* v. *Delaval and others*, 3 Burr. 1436, that in cases of *habeas corpus* directed to private persons to bring up infants, the court is bound *ex debito justitiæ* to set the infant free from improper restraint. They are not bound to deliver the infant over to any particular person. This must be left to their discretion according to the circumstances that shall appear before them: 8 Johns. 328. It is to the benefit and welfare of the infant to which the attention of the court ought principally to be directed. If, then, the judge below, in the exercise of his discretion as to the welfare and benefit of the child, Catalina, did not deem such testimony as is insisted upon in this case ought to have been heard, necessary or pertinent to the issue before him as to whether the child was rightfully held as a peon by defendant or not, can it be made error here? The decree discharged the child out of the custody of the defendant, and delivered it over to its mother. That the mother had been a woman of immorality is proved by the very fact of her having illegitimate offspring. The illegitimate birth of the very child in controversy was evidence of

the fact.   But she was the mother, and the law gave to her the custody of it.   If she is unfit to have its custody, the law provides that the probate courts of this territory can appoint a guardian for the child.   The door is open to have full justice done in the premises, and if the district judge did not assume upon himself to appoint a guardian for this child, other than the mother, what right has the defendant to complain unless she believes this testimony, if given, would have given her the child?   If there is any error, it is not error against appellant.   Let the decree below be affirmed, with costs.