797 P.2d 317

**STATE of New Mexico, ex rel., HUMAN SERVICES DEPARTMENT, in the Matter of MICHAEL R.C., a child, Petitioner–Appellee,**

v.

**Salvador AGUIRRE, Respondent–Appellant.**

**No. 12086.**

Court of Appeals of New Mexico.

July 24, 1990.

Elizabeth Cunningham, Sp. Asst. Atty. Gen., Child Support Enforcement Div., Roswell, for petitioner-appellee.

C. Barry Crutchfield, Templeman and Crutchfield, Lovington, for respondent-appellant.

OPINION

APODACA, Judge.

In a paternity proceeding filed in the trial court, the state sought an adjudication that respondent Salvador Aguirre was the father of a child, Michael R.C. On interlocutory appeal, respondent challenges the trial court's denial of his demand for a jury trial. We determine that respondent is not entitled to a jury trial because such right did not exist at common law or by statute at the time the New Mexico Constitution was adopted. We therefore affirm the trial court.

The child was born on June 16, 1988. The paternity proceeding was brought under the Uniform Parentage Act, NMSA 1978, Sections 40–11–1 to –23 (Repl.Pamp. 1989) (the Act). The Act, as adopted by the New Mexico Legislature, is silent on the matter of jury trials in paternity proceedings but does provide that an action under it is a civil action governed by the rules of "civil procedure." The Act was adopted by the 1986 Legislature and became effective July 1, 1986. § 40–11–14(A).

Section 14 of the Uniform Parentage Act as promulgated by the National Conference of Commissioners on Uniform State Laws contained a subsection "(d)" providing "[ (d) The trial shall be by the court without a jury.]." As observed by the drafters in their comments to the proposed uniform act, the use of a jury in paternity actions was not deemed to be desirable. However, the drafters continued "[t]he clause eliminating the jury is bracketed ... because in some states constitutions may prevent elimination of a jury trial in this context."

In its petition, in addition to requesting a determination that respondent was the father of the child, the state sought an order requiring respondent to pay monthly child support in the amount of $300.00 and to

reimburse the child's mother $1,031.50. The latter amount represented one-half of the child-rearing expenses to the date of the filing of the petition. Respondent filed a demand for a jury trial and the state responded with a motion to strike the jury demand, claiming respondent did not have a right to a jury trial in paternity proceedings. The trial court granted the state's motion to strike and certified the issue for interlocutory appeal. *See* NMSA 1978, § 39-3-4(A) (Orig.Pamp.).

Respondent argues he is entitled to a jury trial in this matter as guaranteed by the seventh amendment of the United States Constitution and Article II, Section 12 of the New Mexico Constitution. He claims that the correct method of determining whether a right to a jury trial exists in paternity proceedings is to consider whether the issues presented at trial involve legal or equitable rights.

The authorities relied on by respondent to distinguish between legal and equitable rights are federal cases involving the interpretation of the seventh amendment of the United States Constitution as applied to various federal statutory provisions. However, in this appeal, we are concerned with the interpretation of a New Mexico statutory provision. *See* § 40-11-14(A). We note, as well, that although the seventh amendment governs the right to trial by jury in federal courts, it does not control the right to jury trial in state courts. *See Scott v. Woods*, 105 N.M. 177, 730 P.2d 480 (Ct.App.1986).

In *State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 315 P.2d 223 (1957), our supreme court dealt with the issue of whether a trial court could fine an individual for contempt of court in an amount exceeding $50.00 without a jury trial. In deciding whether there was a right to a jury trial in the case, the court stated that it viewed the issue in the context of the New Mexico Constitution's right to jury trial.

New Mexico Constitution Article II, Section 12 provides "[t]he right of trial by jury *as it has heretofore existed* shall be secured to all and remain inviolate." (Emphasis added.) In construing this constitutional provision, *Greenwood* concluded that "the Constitution continues the right to jury trial in that class of cases in which it existed either at *common law or by statute at the time* of the adoption of the Constitution." *Id.* at 161, 315 P.2d at 226 (emphasis in original and added). *See Evans Fin. Corp. v. Strasser*, 99 N.M. 788, 664 P.2d 986 (1983); *Peyton v. Nord*, 78 N.M. 717, 437 P.2d 716 (1968); *Hamilton v. Walker*, 65 N.M. 470, 340 P.2d 407 (1959); *Guiterrez v. Gober*, 43 N.M. 146, 87 P.2d 437 (1939); *State v. Chavez*, 88 N.M. 451, 541 P.2d 631 (Ct.App.1975); *State v. Jackson*, 78 N.M. 29, 427 P.2d 46 (Ct.App.1967); *State v. Sweat*, 78 N.M. 512, 433 P.2d 229 (Ct.App.1967). *See also* 47 Am.Jur.2d *Jury* § 17 (1969); 50 C.J.S. *Juries* § 10 (1947).

An analysis similar to that used in *Greenwood* has been relied on by other jurisdictions to determine whether there exists a right to a jury trial specifically in paternity proceedings. *See Doe v. Roe*, 5 Haw.App. 558, 705 P.2d 535 (1985); *Comish v. Smith*, 97 Idaho 89, 540 P.2d 274 (1975); *State ex rel. Goodner v. Speed*, 96 Wash.2d 838, 640 P.2d 13, *cert. denied*, 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982); *see also* Annotation, *Paternity Proceedings: Right to Jury Trial*, 51 A.L.R. 4th 565 (1987).

In *Doe v. Roe*, the Hawaii Court of Appeals considered the appellant's arguments that he was entitled to a jury trial under the Uniform Parentage Act and the state and federal constitution. The court denied the claim, observing that: "[T]he language of [Section 14 of the Uniform Parentage Act] in the context of the entire chapter ... convinces us that the legislature did not intend to provide for jury trials in paternity actions. The repeal of [the former statute authorizing a jury trial] is a clear indication of the legislature's intent."

To determine whether respondent has a right to a jury trial in the context of paternity proceedings, we must consider whether such an action fits within that "class of cases" in which the right existed either at common law or by statute at the time of the adoption of our constitution. *See State ex rel. Bliss v. Greenwood;* N.M. Const.

art. II, § 12. We conclude that a paternity action does not fall within this category of cases for two reasons.

First, using the method or analysis urged upon us by respondent, whether the issue presented at trial involves legal or equitable rights, we hold that a paternity suit most resembles an action that invokes the equitable powers of a court, such as divorce, child custody, and child support actions. As such, under respondent's analysis, there would be no right to a jury trial. We thus adopt the rationale of *E.R.B. v. J.H.F.*, 496 A.2d 607 (D.C.1985). In *E.R.B.*, the right to a jury trial was analyzed under the seventh amendment of the United States Constitution, since the case originated in the District of Columbia. *E.R.B.* held that a paternity action, because it most resembled a child support proceeding, which in turn was considered equitable in nature, was not guaranteed a jury trial under the seventh amendment. *See also Hyatt v. Hill*, 714 P.2d 299 (Utah 1986) (majority used analysis that no paternity action existed at time Utah constitution was adopted; concurring opinion compared paternity action to cause of action in existence at time constitution was adopted and held it most resembled a divorce proceeding, an equitable action).

The second reason for our conclusion involves a consideration of whether a paternity proceeding existed either by statute or at common law at the time our constitution was adopted. We first examine the question of whether such an action existed by statute.

In 1923, the legislature adopted the first paternity statute. It provided that such a cause of action would be tried by a jury unless waived by the parties. *See* 1923 N.M.Laws, ch. 32 § 10. That statute, with only minor modifications, was in effect until the legislature repealed and replaced it with the Act. *See* NMSA 1941, § 25–410; NMSA 1953, § 22–4–10; NMSA 1978, § 40–5–9 (Repl.Pamp.1983); 1986 N.M. Laws, ch. 47, § 25. Our constitution, however, was adopted in 1911, before adoption of the first paternity statute. It thus appears that a statutory right to trial by jury

in paternity proceedings was nonexistent at the time our constitution was adopted. We therefore conclude respondent does not have a constitutional guarantee to a jury trial founded on a statutory provision. *See State ex rel. Bliss v. Greenwood;* N.M. Const. art. II, § 12.

We next consider the case law existing when our constitution was adopted to determine whether a paternity action existed at *common law. See id.* In doing so, we are well aware that the absence of any reported cases on this issue is not necessarily dispositive of the issue before us. Before adoption of the New Mexico Constitution, there was only one reported case involving the subject of illegitimate children. *See Bustamento v. Analla*, 1 N.M. 255 (1857). That case, however, dealt with the issue of custody and was not a paternity action. *Id.*

On the other hand, we have found two reported cases from which we can conclude that paternity actions did not exist at common law. In *Ex parte Wallace*, 26 N.M. 181, 190 P. 1020 (1920), our supreme court dealt with the issue of whether a putative father was required to consent to the adoption of his illegitimate child and, if not, whether it was essential that the putative father be given notice of the adoption proceedings. *Wallace* held that only the mother's consent was necessary for adoption and that notice of the proceedings to the putative father was not required. In so holding, the court observed that under state law, the putative father had no responsibility to care for, educate, and maintain the illegitimate child. *See id.* at 192–193, 190 P. at 1024. However, since then, this court has held that the primary purpose of paternity proceedings is to insure that the putative father meets his obligation to help support the child. *See P.V. v. L.W.*, 93 N.M. 577, 603 P.2d 316 (Ct.App. 1980).

The respective holdings in the two cases, taken together, suggest to us that there was no common law paternity action before adoption of our constitution. That being the case, the issue of a party's right to a jury trial in such cases could not have

existed at the time the constitution was adopted. We conclude that respondent does not have a constitutional right to a jury trial in paternity proceedings based on the existence of such right at common law at the time the constitution was adopted. *See State ex rel. Bliss v. Greenwood;* N.M. Const. art. II, § 12.

We also note that several cases relied on by respondent are distinguishable because the respective statutes there specifically provided for a jury trial in paternity actions. *See, e.g., State ex rel. Sowle v. Brittich,* 7 Wis.2d 353, 96 N.W.2d 337 (1959). Likewise, we agree with the state's contention that some of respondent's authority permitted jury trials because paternity proceedings were in existence when the respective states adopted their constitutional provisions dealing with the right to trial by jury. *See, e.g., Smith v. Bailen,* 258 N.W.2d 118 (Minn.1977); *G. v. C.,* 172 N.J.Super. 123, 410 A.2d 1199 (1978).

As we previously noted, the paternity statutory provisions repealed by the Act expressly provided for trial by jury, absent waiver of such proceedings. Relying on that fact, respondent argues there is no rational basis for denial of a jury trial under the Act. As a result, he contends, his constitutional rights to such a proceeding should be recognized. Respondent also claims that omission of express language in the Act providing for a jury trial is insignificant because, had the legislature intended to deny the right to trial by jury in paternity proceedings, it would have expressly stated so. We disagree.

The legislature may enact statutes and modify existing statutes in any manner and to any degree it sees fit, as long as the legislation conforms to constitutional standards. *See Ferguson v. New Mexico State Highway Comm'n,* 99 N.M. 194, 656 P.2d 244 (Ct.App.1982). Additionally, when the legislature enacts a new statute, we must presume that it intended to change the law as it existed previously. *See Bettini v. City of Las Cruces,* 82 N.M. 633, 485 P.2d 967 (1971); *see also In re Estate of Welch,* 80 N.M. 448, 457 P.2d 380 (1969) (every presumption is to be indulged in favor of

the validity and regularity of legislative enactments). We presume the legislature intended to change the requirement of jury trials in paternity proceedings when it repealed the prior statute expressly providing for such trials and replaced it with the Act, which was silent on the subject. *See id.*

Respondent also contends his claim for a jury trial is supported by the guarantee of such proceedings in criminal matters. We find this argument unpersuasive since paternity proceedings are civil in nature and the Act eliminated any criminal penalties. *See P.V. v. L.W.;* § 40–11–14(A).

Respondent next argues that the paternity action in this appeal was a proceeding in which the right to a jury trial was not only required but of paramount importance when the state became a party. We fail to understand why the fact that the state was a party in this case should mandate a jury trial. The primary purpose of a paternity proceeding is to compel the father to support his child. *Id.* It necessarily follows that the state has an interest in these cases in order to ensure that the child is financially cared for and that such responsibility does not needlessly fall on the state. For this reason, the state may properly be an interested party to paternity proceedings. *See* § 40–11–7. We disagree with respondent that the state's involvement somehow necessitated a guarantee to a jury trial.

Finally, respondent disagrees with the state's argument placing reliance on today's scientific methods of proving paternity as a reason for trying these matters before a judge rather than a jury. Respondent characterizes this argument as dangerous because it inappropriately relinquishes determination of parentage to testing agencies, which are subject to human error in conducting the tests and reporting the results. We disagree. Although scientific evidence and opinion is admissible to prove paternity and in fact establishes a presumption of paternity, *see* Section 40–11–5(D), this evidence is not conclusive on the fact finder. *See State ex rel. Human Servs. Dep't v. Coleman,* 104 N.M. 500,

723 P.2d 971 (Ct.App.1986). Respondent can attack the testing procedures and the results in a bench trial in the same manner he could if the fact finder were a jury.

In summary, we hold that the right to trial by jury did not exist at common law or by statute at the time our state constitution was adopted. As a result, we conclude the trial court did not err in denying respondent's jury demand. We affirm and remand for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.