1997–NMCA–021

934 P.2d 293

**STATE of New Mexico, ex rel., CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**In the Matter of T.J., R.W., and K.W., Children and Concerning B.J., Respondent–Appellant.**

**No. 17334.**

Court of Appeals of New Mexico.

Jan. 14, 1997.

Certiorari Denied Feb. 20, 1997.

Tom Udall, Attorney General, Santa Fe, Angela Adams, Chief Children's Court Attorney, Diane Garrity, Children's Court Attorney, Children Youth and Families Department, Santa Fe, for Petitioner–Appellee.

Mark S. Sweetman, Clovis, for Respondent–Appellant B.J.

Donna U. Quinn, Clovis, Guardian Ad Litem.

### OPINION

APODACA, Chief Judge.

1. Mother appeals the termination of her parental rights with respect to her three children, contending that her request for a jury trial was wrongly denied by the trial court. She also argues that the trial court's decision denied her due process, and she raises a sufficiency of the evidence issue regarding one of the trial court's findings of fact. We hold that parents are not entitled to a jury trial in termination cases and affirm the trial court on that issue. We also affirm on the other issues raised by Mother and thus uphold the trial court's order terminating Mother's parental rights.

## I. DISCUSSION

### A. Right To Trial By Jury

2. Mother argues that she is entitled to a jury trial because parents have a fundamental constitutional right to raise their children and that right must be safeguarded by allowing a right to a jury trial. She claims that, although the Children's Code is silent on the question of entitlement to a jury trial, the Code nonetheless must be interpreted in favor of such a right, given the importance of the matter at stake in termination proceedings. She also argues that a jury must be the fact finder because, during abuse and neglect proceedings leading to termination, the same judge has presided over a number of judicial review hearings at which the rules of evidence do not apply. The implication is that a judge will be unfairly influenced by the prior proceedings and that a jury will not be so influenced. We disagree with all of these arguments.

### 1. Children's Code Provisions

3. We first examine the relevant portions of the Children's Code to determine whether a statutory right to a jury trial exists. If the Code can be so interpreted, of

course, we need not embark on any constitutional analysis. *Cf. State v. Benjamin C.,* 109 N.M. 67, 69–70, 781 P.2d 795, 797–98 (Ct.App.1989) (examining statutory right to jury trial even though no constitutional right existed). Reviewing the statutory provisions as a whole, however, we conclude that they do not provide for a jury trial in termination proceedings. The two sections of the Code that specifically discuss termination of parental rights, NMSA 1978, Sections 32A–4–28, and 29 (Repl.Pamp.1995), clearly refer to the judge as making the decision rather than to some other fact finder. For example, the statute requires "the court" to give primary consideration to the needs of the child in termination proceedings. Section 32A–4–28(A). It also allows "the court" to approve an adoption, if "the court" finds that parental rights should be terminated and the requirements for an adoption have been met. Section 32A–4–28(E). Section 32A–4–29, concerning the procedure to be followed in termination proceedings, states in pertinent part that: when "the court" terminates parental rights, it shall appoint a custodian for the child and fix responsibility for the child's support; "the court" is required to specifically find that the requirements of the Indian Child Welfare Act have been met in any termination proceeding involving a child subject to that Act; and a judgment of "the court" terminating parental rights divests the parent of all legal rights and privileges. Sections 32A–4–29(K), (L), and (M).

4. By specifically stating that the court is to make the decision to terminate parental rights, and by using that term in situations where it is clear that a judge and not a jury will be the decision maker (such as approving an adoption), the legislature has made it plain that the question presented at termination proceedings will be decided by a judge rather than a jury. This point becomes even clearer if we examine another section of the Children's Code concerning delinquency proceedings. In NMSA 1978, Section 32A–2–16(A) (Repl.Pamp.1995), the legislature specifically provided that a jury trial may be demanded on the issue of whether the alleged delinquent acts were committed by the child, in the event the offense alleged would be triable by a jury if committed by an adult.

In a later provision, however, the legislature has stated that "the court" is to make the dispositional judgment. The jury has no role in the disposition process, and the legislature's use of the same terminology in the termination portion of the Code thus indicates to us that the jury has no role in the termination process either.

5. This conclusion is further buttressed by an examination of past versions of statutes dealing with abused or neglected children. The 1953 codification of New Mexico statutes included provisions concerning what were then referred to as dependent and neglected children. These provisions had been in effect in substantially similar form since 1917. NMSA 1953, §§ 13–9–1 to –11. Section 13–9–5 included a phrase stating that "if a jury trial is demanded," the case shall be tried at the next term in which jury trials are held. Additionally, Section 13–9–6 provided that, when a child was found by "the court or jury" to be dependent and neglected, "the court" should adjudge the child to be a ward of the court and take appropriate action. A reading of these other sections clearly establishes that the prior procedure in cases similar to this case was to allow a jury trial but only on the factual issues. The disposition of the child was left to the judge rather than to the jury. Under the current scheme, however, there is no mention of a jury, and the judge is to act as both fact finder and decision maker. This change from the prior statutory language persuades us that the legislature intended to change the procedure to eliminate the possibility of a jury trial in any aspect of a termination proceeding. *See State ex rel. Human Servs. Dep't v. Aguirre,* 110 N.M. 528, 531, 797 P.2d 317, 320 (Ct.App. 1990) (repeal of statute that expressly provided for jury trial, coupled with absence of mention of jury trial in new statute, led this Court to presume that legislature's omission was intentional and that there was no right to jury trial under new statute).

## 2. Constitutional Right

■ 6. Having determined that the Children's Code does not contain a provision authorizing a jury trial in termination cases, we turn now to the question of whether

Mother was entitled to a jury trial under our constitution. To decide whether she had such a right, we must analyze whether there was a right to a jury in cases such as the case before us at the time the New Mexico Constitution was adopted in 1911. *Aguirre,* 110 N.M. at 529, 797 P.2d at 318. If there was such a right, either at common law or by statute, Mother is entitled to a jury trial in this case. *Id.* (discussing N.M. Const. Art. II, Sec. 12, which provides that the right to a trial by jury "as it has heretofore existed" shall remain inviolate).

### a. Statutory Right

■ 7. Mother has not cited any statute existing in 1911 that may have provided a right to a jury in termination or similar cases. Our review of the statutory history also reveals that there was no statute providing that right. The only analogous legislative provisions in existence in 1911 were two sections of the adoption law, Compiled Laws of New Mexico 1897, Sections 1488 to 1508. The first of these provisions gave the probate judge the power and authority to remove children from the custody of prostitutes or inhabitants of a house of ill fame and to grant custody to another proper person, association, or corporation. Section 1503. The second provision allowed the probate judge to permit adoption of children who had been abandoned and were not provided for by parents or relatives. Section 1504. These provisions were still in effect when New Mexico's statutes were recodified in 1915, so it is obvious they were in force when the constitution was adopted. NMSA 1915, §§ 20 to –21. It is clear to us that these provisions did not contemplate a parent would have a right to a trial by jury before being deprived of custody, inasmuch as the legislature gave the necessary power to the probate judge rather than to some other fact finder.

8. We note that, in 1917, a more extensive statutory structure was enacted concerning dependent and neglected children. NMSA 1929, §§ 22–101 to –07. This legislation provided a procedure for determining whether a child was dependent and neglected and also allowed the child to be adjudged a ward of the court and to be placed with some individual or organization other than the parents. Sections 22–104 to –06. As we previously observed, the legislature specifically recognized in these provisions the right to a jury trial concerning the factual issue of whether the child was dependent or neglected. Sections 22–105 to –06. These statutory provisions, however, because they were enacted six years after the constitution was adopted, cannot be the basis for a right to a jury under our constitution. *See Aguirre,* 110 N.M. at 530, 797 P.2d at 319 (legislature's adoption of paternity statute in 1923, which statute gave right to jury trial in such cases, was not effective to confer right to jury trial under the constitution).

### b. Common Law Right

■ 9. Examination of the common law existing in the year our constitution was adopted also reveals that no right to a jury trial existed in cases similar to termination cases. The question of a common-law right to a jury rests essentially on a determination of whether the type of case calls for equitable or legal relief. *Evans Fin. Corp. v. Strasser,* 99 N.M. 788, 789, 664 P.2d 986, 987 (1983) (inquiry under New Mexico Constitution is whether relief sought is legal, in which case parties have right to jury trial, or equitable, in which case no such right is present); *Aguirre,* 110 N.M. at 530, 797 P.2d at 319 (deciding whether issue presented at trial involved legal or equitable rights). Our review of cases decided close to the time our constitution was adopted indicates that there was no dispute about the nature of actions such as the one that is the subject of this appeal—cases in which children were taken from the control of their parents were equitable actions rather than legal. *See, e.g., Blanchard v. State ex rel. Wallace,* 29 N.M. 584, 586, 224 P. 1047, 1048 (1924). In *Blanchard,* our Supreme Court discussed the fact that in England there was a well-established doctrine in equity that courts of equity had jurisdiction over the care and custody of infants and that a court of equity could entertain a proceeding to take custody from the parents of an infant and place the child with other persons or organizations. *Id. Blanchard* pointed out that American

courts have "inherited" this jurisdiction. *Id.* It is thus plain that actions to terminate parental rights have historically been considered equitable in nature and were so considered in New Mexico at the time our constitution was adopted. *See also* 42 Am.Jur.2d *Infants* §§ 22, 29 (1969) (it has long been recognized that courts of equity, to carry out the Crown's duty as *parens patriae,* may exercise their jurisdiction to protect infants; custody of minor children is subject to the general jurisdiction of a court of equity, independent of any statute). Obviously, no jury trial would have been allowed for such equitable actions. *See Evans.*

### c. Summary

10. Because no jury trial was allowed in 1911, by statute or common law, in cases similar to termination actions, Mother has not shown that she is entitled to a jury trial under the constitutional provision that preserves inviolate the right to a jury trial as it existed in 1911.

### 3. Due Process Argument

11. Mother raises another constitutional claim that she is entitled to a jury trial as a matter of due process. We agree with Mother that the right to retain a parental relationship with a child is a fundamental right that merits strong protection. *See Oldfield v. Benavidez,* 116 N.M. 785, 790, 867 P.2d 1167, 1172 (1994). However, the child also has fundamental rights that often compete with the parent's interests. *Id.* The state, in turn, has a compelling interest as *parens patriae* in protecting the child's rights. *Id.,* at 791, 867 P.2d at 1173.

12. In a termination case, a judge is required to act in the best interests of the children, while giving full weight to the importance of the parent-child relationship. Our review of many abuse and neglect cases leads us to the belief that judges in New Mexico's children's court appropriately balance the children's interests with those of the parents. We disagree with Mother's implied assertion that a judge's familiarity with the prior proceedings will lead to a pre-judgment that is biased against the parent. It is just as likely, if not more likely, that familiarity

with the prior proceedings and the case as a whole will enable the judge to properly consider all of the factors that must be taken into account in making the difficult decision to either terminate the parent's rights or leave the child in the parent's custody. *Cf. McKeiver v. Pennsylvania,* 403 U.S. 528, 550, 91 S.Ct. 1976, 1988–89, 29 L.Ed.2d 647 (1971) (discussing holding that jury trial is not constitutionally mandated in juvenile delinquency proceedings and pointing out that concerns about the inapplicability of rules of evidence, the court's knowledge of the juvenile's prior record, and familiarity with witnesses who have testified in previous proceedings, all ignore the fact that juvenile proceedings are conducted with concern and sympathy for the child). As *McKeiver* points out, a jury trial removes a case from its status as a protective proceeding, while adding little if any efficacy to the fact finding process. *Id.,* at 545–47, 91 S.Ct. at 1986–87. For similar reasons as those discussed in *McKeiver,* we hold that a jury trial is not constitutionally required in termination cases, just as it is not required in delinquency proceedings.

13. We recognize that some jurisdictions, by statute or constitution, allow a jury trial in termination proceedings. *See, e.g., A.E. v. State,* 743 P.2d 1041 (Okla.1987); *In re MLM,* 682 P.2d 982 (Wyo.1984) (discussing appropriateness of instructions given to jury). Other jurisdictions, where neither a statute nor the constitution has provided for a jury trial, do not grant such a right. *See, e.g., Mays v. Department for Human Resources,* 656 S.W.2d 252 (Ky.1983). We do not express an opinion on which approach is preferable, as that question is not before us. We hold only that the right to due process does not include the right to a jury trial in termination cases.

14. We note that, in their answer briefs, the Children, Youth and Family Department (the Department) and the guardian ad litem refer to the Children's Court Rules in a portion of their argument on the jury trial issue. Mother has not expressly argued that those rules contain a grant of a right to a jury trial. To the extent she may have implicitly made such an argument, however, we

point out that the rules specifically state that the Children's Code prevails over the rules to the extent there is any conflict between them. NMRA 1996, 10–101(A)(5). Because the Code does not provide a right to a jury trial, as we already noted, the Code's requirement of a non-jury proceeding would control. Additionally, nothing in the rules purports to allow jury trials in termination proceedings, and a comparison of the rules applicable to delinquency proceedings and those pertaining to abuse and neglect proceedings shows that our Supreme Court did not intend to create a right to a jury trial in the latter. *Compare* NMRA 1996, 10–210, and 10–228 (containing express language regarding right to jury trial in delinquency proceeding), *with* NMRA 1996, 10–304 (omitting the right to a jury trial from the list of rights that must be explained to a respondent in an abuse and neglect proceeding).

### B. Denial Of Due Process

15. Mother does not contest the evidence addressed at trial establishing that she is suffering from paranoid-type schizophrenia with the probability of a bi-polar personality disorder and that she is of low average to borderline intelligence. There was also evidence that Mother attempted to participate in two psycho-social rehabilitative programs in 1993, shortly after physical custody of the children was given to Mother's father (Grandfather). The children have been in Grandfather's custody since March 1993, have made excellent progress in his care, have done well in school, and have not needed therapeutic services. Grandfather would not accept permanent guardianship of the children, but agreed to adopt them under a subsidized adoption program that would provide an income allowing him to continue supporting the children. A social worker testified at the hearing that adoption was preferable for the children rather than permanent guardianship because adoption offered finality. The social worker also testified that Grandfather had provided the only stable environment the children knew, and had provided a consistent, loving, and respectful home.

16. Based on this evidence, Mother argues that the judge was constitutionally required to impose the least restrictive alternative available. Mother contends that this alternative was a permanent guardianship, with Grandfather as guardian, rather than the adoption. She also maintains that the court could have required the Department to provide financial assistance to Grandfather as guardian, as would have been provided in a subsidized adoption situation. According to Mother, this would have removed the only obstacle in the way of guardianship as opposed to adoption—Grandfather's financial inability to care for the children without financial assistance.

17. First, we point out that Mother has cited to no regulation or statute that would allow the Department to implement a subsidized guardianship in this case rather than a subsidized adoption. Absent such authorization or the availability of funds for such a plan, Mother's argument lacks any factual or legal basis.

18. Additionally, Mother's fundamental right to parent her children is not the only interest at stake in these proceedings. As we previously noted, the children have rights that are even more significant than Mother's interest. *See In re Adoption of J.J.B.*, 119 N.M. 638, 652, 894 P.2d 994, 1008 (1995) (when custody based upon the biological parent-child relationship is at odds with the best interests of the child, the child's interests must prevail). There was evidence in this case that it is in the best interests of the children to be adopted by Grandfather, rather than to be placed in a permanent guardianship situation. That evidence was sufficient to allow the trial court to terminate Mother's parental rights. The court was not constitutionally required to leave open the possibility that Mother could become able, at some undetermined point in the future, to parent the children adequately. *Cf. id.*

### C. Sufficiency Of The Evidence

19. Mother does not attack the evidence as a whole. She does, however, argue that there was no evidence to support a particular finding of fact made by the trial court. The trial court found that Grandfa-

ther did not desire a permanent guardianship situation "because of . . . his concern with regard to whether [Mother] would ever be able to care for the children properly." Mother admits that Grandfather testified that he did not want a permanent guardianship and that he expressed doubt about the possibility that Mother would ever become an adequate parent for the children. Mother argues, however, that there was no evidence that the two were connected—she maintains that the only objection Grandfather had to the guardianship was his concern about being in a financial position to care for the children and that his objection was not based on his doubts concerning Mother's potential for improving her parenting abilities.

20. Even if Mother's contention on this point is correct, it is not grounds for reversal. The trial court entered a number of other findings that support the order terminating Mother's parental rights. For example, the court found that it would not be in the children's best interest to deny the children permanence, due to the length of time they have been in Grandfather's care, the significant bonding they have with him, and the improvements they have shown in their behavior and in their school performance while in Grandfather's care. The court also found that, based on Mother's past failures to comply with efforts directed at returning the children to her custody, there was no reason to believe that further delay in terminating her rights would facilitate the safe return of the children to her. According to the court's findings, Mother is not able now and would not be able in the future to meet the children's emotional, psychological, or physical needs, or to provide a safe and stable environment for them. All of these findings, as well as a number of others we need not mention, amply support the court's decision to terminate Mother's parental rights. The one possibly erroneous finding upon which Mother focuses, therefore, was not necessary to the judgment and should not be the basis for reversal. *See Lebeck v. Lebeck,* 118 N.M. 367, 371, 881 P.2d 727, 731 (Ct.App.1994) (erroneous findings of fact unnecessary to support the judgment are not grounds for reversal).

## II. CONCLUSION

21. Because no right to a jury trial has been granted by statute or by New Mexico's constitution for termination cases, we hold that Mother's request for such a trial was properly denied by the trial court. We also hold that Mother's due process rights were not violated and that there was sufficient evidence to support the trial court's decision to terminate Mother's parental rights. We therefore affirm.

22. **IT IS SO ORDERED.**

BOSSON and BUSTAMANTE, JJ., concur.