This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37690

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

       Petitioner-Appellee,

v.

**ADRIAN H.,**

       Respondent-Appellant,

and

**JAZIMOND T.,**

       Respondent,

**IN THE MATTER OF ESTRELLA H.,**

       Child.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY
Emilio J. Chavez, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Robert Fitzgerald
Ranchos de Taos, NM

Guardian Ad Litem

## DECISION

**M. ZAMORA, Judge.**

**{1}** Adrian H. (Father) appeals the district court's judgment terminating his parental rights in his Child. Father contends that Children, Youth and Families Department (the Department) never identified the causes and conditions of neglect, therefore the Department failed, by clear and convincing evidence, to show that the conditions and causes of the neglect had not been resolved and are unlikely to change in the foreseeable future. Father further contends that the district court misapprehended the term "foreseeable future" in its application to this case. Last, he contends the district court failed to find that the termination of Father's parental rights was in Child's best interest. We affirm.[1]

**{2}** Because this is a non-precedential, expedited bench decision and the parties are familiar with the facts and procedural background, we reserve discussion of the pertinent facts within the context of Father's appellate arguments. We address Father's arguments in turn.

## DISCUSSION

### I. Clear and Convincing Evidence Supports the Judgment Terminating Father's Parental Rights in Child

**{3}** The Department filed a motion for termination of parental rights pursuant to NMSA 1978, Section 32A-4-28(B) (2005). Section 32A-4-28(B)(2) states in pertinent part:

> The court shall terminate parental rights . . . when the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the [district] court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the [D]epartment . . . to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

---

[1] At the outset, we remind Father that litigants are encouraged to limit the number of issues they choose to raise on appeal in order to ensure that those presented are adequately supported by argument, authority, and properly cited facts in the record. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.").

**{4}** The Department bears the burden "to prove [these] . . . grounds for termination by clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. "[C]lear and convincing evidence" is defined as evidence that "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 2, 120 N.M. 463, 902 P.2d 1066 (internal quotation marks and citation omitted). Despite this stringent standard, on appeal, "this Court will not reweigh the evidence." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. "The function of the appellate court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom if the mind of the fact[-]finder could properly have reached an abiding conviction as to the truth of the fact or facts found." *State ex rel. Children, Youth & Families Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 12, 130 N.M. 781, 32 P.3d 790 (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. This Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *Vanessa C.*, 2000-NMCA-025, ¶ 24.

## A. Child Was Neglected as Defined by the Children's Code

**{5}** The Department filed a petition alleging that Father had abused and neglected Child. Father did not contest the allegations that Child was neglected. Against advice of counsel, Father voluntarily entered into a no contest plea and judgment was entered that Father neglected Child pursuant to NMSA 1978, 32A-4-2(F)(2) (2009, amended 2016) (current version at Section 32A-4-2(G)(2) (2018)). The factual basis of Father's plea was that "[Father was] not providing [C]hild with proper supervision necessary for [C]hild[']s well-being and [Father has] exposed [C]hild to domestic violence and substance abuse all of which placed [C]hild in an unsafe living environment and placed [C]hild at risk of serious harm."

**{6}** Father argues that in spite of the adjudication judgment, the Department was required, at the termination of parental rights trial, to prove, again, that Child was neglected. He also contends that because such proof is required, the district court could not take judicial notice of the adjudication. We disagree.

**{7}** Rule 10-342(C)(3) NMRA governs no contest pleas for abuse and neglect proceedings and states that when a respondent enters into a no contest plea, the court will determine that "the respondent understands that by making an admission, including entering into a no contest plea, the court will enter a finding that the child is an abused or neglected child as to that respondent and as defined under the Children's Code, and that such a finding can be used against the respondent to establish the fact of abuse and/or neglect in the event the case proceeds to a hearing on a motion to terminate

parental rights[.]" At the adjudication, the district court explicitly followed the requirements of the rule, including the potential progression of the case to a termination of parental rights trial. By voluntarily entering into a no contest plea to the neglect of his Child and the district court following the requirements of Rule 10-342(C), Father understood the ramifications of his plea.

**{8}** The district court properly took judicial notice of the finding of neglect and did not need to re-adjudicate the finding of neglect. *See* Rule 11-201(B)(2) NMRA ("The court may judicially notice a fact that is not subject to reasonable dispute," including facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 13, 120 N.M. 463, 902 P.2d 1066, (citing to our Supreme Court's opinion, *In re Adoption of J.J.B.*, 1995-NMSC-026, ¶ 38, 119 N.M. 638, 894 P.2d 994, whereby the Court explained that "parental unfitness is inherent in a finding by the district court that any of these conditions i.e., abuse or neglect exist, and no separate showing or finding by the court with reference to unfitness is necessary," and thereby holding[,] "[a] separate finding of parental unfitness was therefore not necessary[.]"(alterations, internal quotation marks, and citation omitted)). Thus, the adjudicatory judgment finding that Father neglected Child is substantial evidence that Father neglected Child, as defined in the Children's Code.

**B.     The Department Made Reasonable Efforts to Assist Father in Alleviating the Causes and Conditions That Brought the Children Into the Department's Custody**

**{9}** The Department has an obligation to provide services targeted to addressing the causes and conditions of Father's neglect of Child. *See State ex rel. Children, Youth & Families Dep't v. Joseph M.*, 2006-NMCA-029, ¶ 22, 139 N.M. 137, 130 P.3d 198 (noting that "a plan must 'correct, eliminate, or ameliorate' the condition on which the adjudication is based"); *see also* NMSA 1978, § 32A-4-21(A), (B)(10) (2016) (requiring the Department to provide a "predisposition study and report" to the district court which includes "a case plan that sets forth . . . services to be provided to the child and the child's parents to facilitate permanent placement of the child in the parent's home"). The reasonableness of the Department's efforts depends on the "totality of the circumstances," which may include "the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Children, Youth & Families Dep't. v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814 (internal quotation marks and citation omitted). "A parent may . . . impeach the reasonableness of efforts to enable him or her to correct the underlying causes and conditions on the basis that those efforts were directed at the wrong causes and conditions." *State ex rel. Human Servs. Dep't v. Penny J.*, 1994-NMCA-143, ¶ 20, 119 N.M. 328, 890 P.2d 389. However, because a parent does not completely cooperate, comply or participate in the services provided or arranged by the Department, does not render the Department's efforts unreasonable. *See State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 23, 132 N.M. 299,

47 P.3d 859 (explaining that "[w]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent").

**{10}** Father was ordered by the district court to comply with a treatment plan which required him to: participate in substance abuse treatment; participate and successfully complete high risk parenting classes; participate and follow recommendations from anger management; participate in drug testing at the request of the Department; participate in a psychological evaluation and follow recommendations; participate in a healthy relationship/domestic violence classes; participate in individual therapy to address mental health issues; and participate in supervised visits with the Child at the Department's discretion. The district court found that the Department made "more than reasonable efforts to provide services" to Father and Child.

**{11}** At the termination of parental rights trial the following testimony was presented. April Jolley, a permanency planning worker with the Department, who became Father's permanency planning worker at the end of July or early August 2017, testified that Father's identified issues were substance abuse and domestic violence. Father missed two of the four most recent visits with Child. At two visits, there were concerns Father was under the influence. When asked to submit to a urinalysis at the Department's office before or after a visit, Father often said he could not urinate. At least three times since the start of 2018, Ms. Jolley asked Father to come to the office outside of visitation times to submit to a urinalysis, and he did not show up. According to Ms. Jolley, Father had not completed any the services to which he was court-ordered. When asked about the possibility of a transition plan to return Child to either parent, Ms. Jolley testified while Father has made efforts, such efforts have been insufficient to resolve the causes that brought Child into the Department's custody. She further testified that based on her observations of Father's pattern of behavior she has observed and worked with over the past year, it is unlikely that Father would be able to mitigate the causes and concerns that brought Child into the Department's custody.

**{12}** Rick Ortiz, a program director, testified about Father's participation in the drug program in Raton about six months earlier. Father started, but did not successfully complete the drug program.

**{13}** Dawn Hahn, laboratory director for Quest Diagnostics, testified that the Department sent a hair sample from Father on February 6, 2018, which tested positive for methamphetamine and marijuana. Another hair sample, taken from Father on August 6, 2018, tested positive for amphetamines and methamphetamine. Ms. Hahn testified that a positive hair test shows a pattern of usage, not one-time use. When asked if she could determine whether other specimens from Father tested negative, Ms. Hahn said it would take time to find any records. Notably, Father never asked Ms. Hahn to identify any negative tests.

**{14}** Tina Lever testified that Father enrolled with Alternative to Violence (ATV) domestic violence offender program, which included anger management and high-risk parenting. At the time of the trial, Father had not completed the program. He had

attended thirty-four classes, was a no call/no show twenty-four times, and cancelled six times. There was also evidence of Father's involvement in a domestic violence dispute in April 2018. Angelic Martinez testified that on the evening of April 4, 2018, Father, Father's brother (Brother), and Brother's female friend were drinking. Police came around 2:00 a.m. because Ms. Martinez was fighting with Brother's friend. Brother woke up Father, and then Brother and Father had an altercation. Anthony Barajas, a Department investigator, testified that Father told him that he got in a fight with Brother after Brother picked up the baby and made a motion that he was going to throw the baby across the room.

{15}   There was testimony that upon being taken into custody in April 2017, Child exhibited an attachment disorder. Mycca Montoya, a child counseling therapist, testified that Father had her contact information and knew he could reach out to set up appointments to work with Child together on attachment, but Father never reached out. Ms. Montoya also testified that the Department did not reach out to facilitate any of these meetings.

{16}   Based on the foregoing evidence and the undisputed findings of fact, we conclude that there is substantial evidence to support the district court's conclusion that the Department's efforts to assist Father in addressing the causes and conditions that brought the Children into the Department's custody were reasonable. *See Patricia H.*, 2002-NMCA-061, ¶ 27 ("[The Department] is only required to make reasonable efforts, not efforts subject to conditions unilaterally imposed by the parent.").

## C.   The Causes and Conditions of Neglect Are Unlikely to Change in the Foreseeable Future

{17}   Father argues the district court did not properly construe the term "foreseeable future"; that Father's failure to comply with his treatment plan was insufficient to support the termination of his parental rights; the Department did not meet its burden of proof; and that the district court applied the incorrect burden of proof.

{18}   The evidence at trial showed that Father had failed to address his longstanding substance abuse and domestic violence issues. There is substantial evidence to support the district court's conclusion that Father failed to alleviate the causes and conditions that brought Child into the Department's custody. Father also argues that one hundred percent compliance is insufficient evidence to terminate his parental rights. While full compliance with a court-ordered treatment plan is preferable, the definitive inquiry is whether Father has made progress in addressing the causes and conditions that brought Child into the Department's custody that would allow him to safely parent Child and provide a safe and stable environment. *See State ex rel. Children, Youth & Families Dep't v. B.J.*, 1997-NMCA-021, ¶ 18, 123 N.M. 99, 934 P.2d 293 (explaining that a parent's fundamental right to parent is not the only interest at stake in termination proceedings and that the district court "was not constitutionally required to leave open the possibility that [the parent] could become able, at some undetermined point in the future, to parent the children adequately").

**{19}** The evidence presented at trial was sufficient under the clear and convincing standard to establish that the causes and conditions of the neglect were unlikely to change in the foreseeable future despite the Department's reasonable efforts to assist Father in adjusting the causes and condition that rendered her unable to properly care for the Children. *See Patricia H.*, 2002-NMCA-061, ¶¶ 23, 28. As stated previously, Father has only completed approximately sixty percent of his classes at ATV in the sixty-nine weeks he was in the program. Also, in these sixty-nine weeks, Father had approximately twenty-four no shows/no calls. Father had two positive hair follicle tests for methamphetamine in the previous six months, and he also missed a number of tests. Ms. Jolley testified that she did not believe there was a likelihood that in the foreseeable future, Father would be able to mitigate the causes and concerns that brought Child into care. In April 2018, Father had domestic violence charges filed against him. Although the charges were ultimately dropped, at the termination trial, witnesses testified to the events of this domestic violence. The district court found that Father was ordered to participate in the Colfax County Drug Court Program, but did not complete the program and was terminated. Father also missed multiple urinalysis requested by the Department. We do note that Father was working two jobs during the majority of the treatment plan. The district court found that Father did not successfully complete any of his treatment plan, made no progress in alleviating the causes and conditions of neglect and could not appropriately and safely parent child in the foreseeable future.

**{20}** Given Father's inability to make progress, there was sufficient grounds to terminate Father's parental rights. *See In re Termination of Parental Rights of Reuben & Elizabeth O.*, 1986-NMCA-031, ¶ 30, 104 N.M. 644, 725 P.2d 844 (interpreting the term "foreseeable future" to refer to corrective change within a "reasonably definite time or within the near future"). Our review of the record indicates that, while Father was compliant with some portions of his treatment plan at the time, he did not make sufficient progress toward changing the circumstances that brought Child into the Department's custody. *See State ex rel. Children, Youth & Families Dep't v. Athena H.*, 2006-NMCA-113, ¶ 9, 140 N.M. 390, 142 P.3d 978 ("[C]ompliance with the terms of a treatment plan is not dispositive of the issue of parental termination. Even with a parent's reasonable efforts, . . . the parent may not be able to make the changes necessary to rectify the cause and conditions of the neglect and abuse so as to enable the court to conclude that the parent is able to properly care for the child.").

**{21}** Father argues that the district court applied the incorrect burden of proof by allowing the Department to produce proof that Father failed to comply with his treatment plan, rather than his lack of parenting skills. Father also misconstrues a comment made by the district court wanting to know whether Father had any significant periods of time when he was sober. Father argues that this comment shifted the Department's burden to prove when Father was sober to requiring Father to prove his sobriety. Because we conclude that clear and convincing evidence supports the district court's finding that despite the Department's reasonable efforts, the causes and conditions rendering Father unable to properly care for Children were unlikely to change in the foreseeable future, we find no merit to Father's additional arguments.

## II. Termination of Father's Parental Rights is in the Best Interests of Child

**{22}** Father argues that the Department failed to prove that it was in the best interests of Child to terminate his parental rights and that the district court failed to make a finding that the termination of Father's parental rights was in the best interests of Child. Father conclusively contends that there was no evidence to support that it was in the best interests of Child to terminate Father's rights. We remind Father that, as the appellant, he carries the burden of demonstrating error below. *See Farmers, Inc. v. Dal Mach Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the [district] court's actions. [The a]ppellant must affirmatively demonstrate its assertion of error."); *see also Chan v. Montoya,* 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**{23}** As a preliminary matter, the Department argues that Father's claim that he preserved the issue for review by simply participating in the trial is not a basis for preservation that Father can rely upon. We agree. "To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked." Rule 12-321 (A) NMRA. Because Father did not properly preserve this issue at the trial level, we will not review it on appeal.

**{24}** Father further claims that the district court specifically stated from the bench that the Department failed to meet its burden of proving termination was in the Child's best interest. However, Father fails to provide a citation to the record, as required, and thus we will not consider his argument. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("The mere assertions and arguments of counsel are not evidence."); *Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819 (explaining that where a party fails to cite any portion of the record to support its factual allegations, the appellate court need not consider its argument on appeal); *see also* Rule 12-318(A)(3) NMRA (requiring briefs in chief to contain "a summary of proceedings, briefly describing the nature of the case, the course of proceedings and the disposition in the court below, and including a summary of the facts relevant to the issues presented for review[, which] summary *shall contain citations to the record proper, transcript of proceedings or exhibits supporting each factual representation*" (emphasis added)).

**{25}** Father's minimal progress in addressing the reasons why Child came into the Department's custody—addiction, lack of sobriety, and domestic violence—prevented the return of Child to his custody. The district court recognized its responsibility to give "primary consideration to [Child's] physical, mental, and emotional welfare and needs" in terminating Father's parental rights. Section 32A-4-28(A); NMSA 1978, §§ 32A-1-3(A) (2009). The cumulative effect of the district court's findings promote Child's physical, mental and emotional welfare and needs by the termination of Father's parental rights. Section 32A-1-3(A).

**CONCLUSION**

**{26}** Based on the foregoing, we affirm the district court's judgment terminating Father's parental rights in Child.

**{27}  IT IS SO ORDRED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**